PETER W. KERO, INC., A CORPORATION, PLAINTIFF-
RESPONDENT, v. TERMINAL CONSTRUCTION COR-
PORATION, A CORPORATION, DEFENDANT-APPEL-
LANT.

Argued November 20, 1950—Decided February 19, 1951.

364

*Mr. Aaron Heller* argued the cause for the appellant. *Mr. Irving Lloyd Gang* on the brief (*Messrs. Heller & Laiks,* attorneys).

*Mr. Samuel R. Blaine* argued the cause for the respondent. (*Mr. C. Wallace Vail,* attorney).

The opinion of the court was delivered by

ACKERSON, J. The defendant, Terminal Construction Corporation, was under contract with the United States Government for certain construction work to be performed in the building of the Veterans' Administration Hospital at East Orange, and plaintiff, Peter W. Kero, Inc., was its subcontractor for the purpose of removing a certain stock pile of earth and rock from the hospital site. The agreement between plaintiff and defendant for the latter work is evidenced by two written contracts, both dated December 10, 1948, both containing the same job designation ("Job No. C-112; P. O. No.-133") and both drawn up on defendant's

purchase order forms. In each document appears identical language providing that the plaintiff will "furnish all labor, materials, and equipment necessary to remove" a certain stock pile of surplus earth and rock from the site in question. One of the contracts states that the consideration for these services "shall be paid at prevailing standard rates, the total of which shall not exceed the sum of $18,000.00 * * *"; the other specified "the total sum of $9,500.00" as the price for the same services. Both contracts are signed by Peter W. Kero, as president of P. W. Kero, Inc., and Charles A. Cusick, purchasing agent for the defendant. In the negotiation and execution of these contracts, as well as many prior agreements between the same parties, plaintiff was represented by one person alone; he was its president, Peter W. Kero, who seems to have had complete control of the corporation and all of its business transactions.

Plaintiff rendered bills to the defendant, one dated December 31, 1948, for $5,000 and one dated January 8, 1949, for $4,500, both of which referred to the job number involved and defendant paid these bills by two checks, one for $5,000 dated February 25, 1949, and the other for $4,500 dated March 26, 1949. The second check, which was delivered by Richard N. Dinallo, president of the defendant company, to Mr. Kero personally, contained a notation on its face, "PO-133-Pd-in-full V. A."

It also appears that when the second check was delivered, Mr. Kero, as president of the plaintiff corporation, executed two releases in favor of the defendant. Both of these releases are on printed general release forms and provide that P. W. Kero, Inc., for the consideration of $1.00 and other valuable consideration discharges the Terminal Construction Corporation from all claims and demands whatsoever, in the usual terminology of such instruments. However, in one of these releases, immediately following the printed words of general release, appears the following statement in typewriting:

"Whereas two contracts were entered into between the parties hereto for work on the Veterans Administration Hospital at East Orange, New Jersey, and one is in the sum of $9,500 and the other

for a sum not exceeding $18,000.00, the purpose of this release is to release the releasee from all claims of both contracts and of all claims for extras, it being agreed that payment heretofore made in the sum of $9,500.00 is in full and all differences between the parties concerning the contracts, the work, or the claims by one against the other are released."

Both releases were concluded in the following manner:

"In Witness Whereof, the said party of the first part has caused these presents to be signed by its President and its corporate seal to be hereto affixed and attested by its Secretary the 4th day of June Nineteen Hundred and Forty-nine

Attest                                                  By P. W. Kero

_____                    _____
            Secretary"                         P. W. Kero    President

Neither of the releases, however, was attested by the defendant's secretary, nor did a corporate or any other seal appear thereon. While the releases are dated "the 4th day of June Nineteen Hundred and Forty-nine" (the figure "4th" is written in ink and the words "June" and "Forty-nine" are in typewriting), Mr. Kero testified that they were actually signed on March 26, 1949, when the second check ($4,500) was delivered to him, and when he signed them at that time they were both completely blank except for the printed matter usually contained in such forms and no typewritten material whatsoever appeared thereon.

Plaintiff instituted the present action on August 31, 1949, by a complaint, predicated upon the $18,000 contract, to recover an alleged unpaid balance thereunder of $8,500 (after crediting the two checks above mentioned, totaling $9,500) plus the reasonable value of extra work alleged to have been done at defendant's request, amounting to $5,000, thus making the total claim $13,500 plus interest and costs. Defendant's answer asserted that the other contract which set a flat price of $9,500 for the work in question embodied the true and final agreement between the parties and the price therein stipulated for had been paid. The answer further pleaded that any claim which plaintiff may have had under any agreement with respect to the aforementioned work was extin-

guished by "general release." Plaintiff replied that the releases thus referred to were procured through fraud in the particulars hereinafter specified.

The pretrial order stated the parties had agreed that the trial was to be based on the pleadings as filed. However, at the inception of the trial, this order was amended to amplify the issues by the insertion of the following sentence: "Whether the plaintiff executed a general release, and whether it is barred from recovery by virtue of any release."

At the close of the evidence defendant moved for a judgment in its favor on the ground that plaintiff had failed to establish any fraud to impugn the validity of the releases and therefore plaintiff's claim was effectively barred thereby. The plaintiff also moved for judgment in its favor on several grounds, *inter alia,* that the releases in question are invalid and not binding on it as a matter of law because they (a) bear no seal, corporate or otherwise; (b) are not attested by its secretary; (c) are not signed with the corporate name and only by "P. W. Kero, President"; (d) are not shown to have been the authorized act of the plaintiff, and (e) being without seal, no consideration is shown to have been given therefor. Both motions were denied and the cause was submitted to the jury resulting in a verdict for the plaintiff in the amount of $8,334.77 with interest and costs, and from the judgment entered thereon the defendant appealed to the Appellate Division of the Superior Court and we certified the cause here on our own motion.

The appeal challenges the trial court's denial of defendant's motion for the direction of a judgment in its favor and also the legal propriety of specified portions of the charge to the jury.

The sole basis of defendant's motion for judgment was that the releases in question barred plaintiff's claim because there was insufficient evidence of fraud in their procurement to warrant the submission of that question to the jury. We think the motion was rightly denied.

The substance of the alleged fraud may be summarized from the testimony given by the plaintiff's president, Peter

W. Kero. He testified that for some time prior to March 26, 1949, he had been trying, unsuccessfully, to obtain from the defendant a further payment on account of work done at the hospital site. Finally, on that date, at about 7 o'clock in the evening, he found Dinallo, defendant's president, alone in his office and Dinallo agreed to pay $4,500 on account but stated that the payment would have to be made from his personal account and therefore he would require two releases, before delivering his check, in order to get the money back from his company. He thereupon produced two forms of general release in blank, except for the printed matter usually appearing on such instruments, and, as the typist had gone home, he requested Kero to sign them in blank upon his, Dinallo's, express representation that he would have them filled in according to the mutual understanding that they were to discharge the defendant only to the extent of the payments so far made (including the present one) and not to operate as releases in full. Kero said he took Dinallo's "* * * word for it, and signed the blank releases." He further testified that although he knew he was signing releases and did not read them and was not prevented from doing so, nevertheless, he did observe that the usual blank spaces appearing on such printed stock forms had not been filled in and he stated that over a course of five years' business relations with the defendant he had signed "dozens of releases."

It is asserted that the aforesaid representation was made deceitfully with no intention of fulfillment and solely for the purpose of obtaining the releases in such form that they could be used thereafter by the defendant in complete bar of any further claims by the plaintiff.

It is the general rule that where a party affixes his signature to a written instrument, such as a release, a conclusive presumption arises that he read, understood and assented to its terms and he will not be heard to complain that he did not comprehend the effect of his act in signing. A notable exception to this rule, however, is when the signature is obtained by fraud or imposition in the execution of the instrument. *Christie v. Lalor,* 116 *N. J. L.* 23, 25 (*Sup. Ct.*

1935); *Kearney v. National Grain Yeast Corp.,* 126 *N. J. L.*
307 (*E. & A.* 1940). It is well settled that where a party is in-
duced to sign a release by reason of a misrepresentation
intended to deceive him as to its purport or content, the signer
has a right to set up such fraud or imposition in avoidance
of such release when there is an attempt to use it against him
by the release, even though the signer might have discovered
the fraud perpetrated upon him by reading the paper and
was negligent in omitting to do so. *McDonald v. Central
R. R. Co.,* 89 *N. J. L.* 251 (*E. & A.* 1916); *Fagan v. Central
Railroad Co.,* 94 *N. J. L.* 454, 459 (*E. & A.* 1920); *Mannion
v. Hudson & Manhattan R. R. Co.,* 125 *N. J. L.* 606 (*Sup. Ct.*
1941); affirmed, 127 *N. J. L.* 230 (*E. & A.* 1941); *McKenna
v. Montclair Police, etc., Commission,* 121 *N. J. L.* 206 (*Sup.
Ct.* 1938); *Kearney v. National Grain Yeast Corp., supra;
cf. Dunston Lithograph Co. v. Borgo,* 84 *N. J. L.* 623 (*E. & A.*
1913); *Diamond Rubber Co., Inc., v. Feldstein,* 112 *N J. L.*
514, 517 (*E. & A.* 1934). And when the fraud is in dispute,
it is a question for the jury. *Palmer v. Tomlin,* 104 *N. J. L.*
215 (*Sup. Ct.* 1927).

Accordingly, where a party is induced to sign a
paper as the result of a false representation that it will be
filled in or prepared as orally agreed, the intentional omission
of terms required by the authorization to be included, or the
inclusion of terms not so authorized, constitutes fraud invali-
dating the instrument as between the parties thereto, notwith-
standing that the party signing was negligent in relying on
the misrepresentation. The rule is that where one party to
an oral agreement entrusts the other with the obligation of
reducing it to writing, he has a right to rely upon the repre-
sentation that it will be drawn accurately and in accordance
with the oral understanding between them. The presentation
of the paper for signature is in itself a representation that
the terms of such oral agreement have been or will be em-
bodied in the writing. It is the policy of the law to protect
the unwary and foolish as well as the vigilant from the wiles
and artifices of evil-doers and negligence in trusting a repre-
sentation will not, according to the greater weight of author-

ity, excuse a positive willful fraud, and parole evidence is admissible to show such fraud. The party perpetrating the fraud should not be permitted to say that he should not have been believed or trusted. *Lloyd v. Hulick,* 69 *N. J. Eq.* 784, 786 (*E. & A.* 1905) ; *Christie v. Lalor, supra; Alexander v. Brogley,* 63 *N. J. L.* 307 (*E. & A.* 1899). *Cf. Fagan v. Central Railroad Co., supra; Pictorial Review Co. v. Rosen,* 171 *Ark.* 719, 285 *S. W.* 385 (*Ark. Sup. Ct.* 1926) ; *Albany City Savings Inst. v. Burdick,* 87 *N. Y.* 40 (*N. Y. Ct. of App.* 1881) ; *Wilcox v. American Telephone & Telegraph Co.,* 176 *N. Y.* 115, 68 *N. E.* 153 (*N. Y. Ct. of App.* 1903) ; *National Cash Register Co. v. Merrigan,* 148 *Minn.* 270, 181 *N. W.* 585 (*Minn. Sup. Ct.* 1921) ; *Bixler v. Wright,* 116 *Me.* 133, 100 *A.* 467 (*Me. Sup. Jud. Ct.* 1917) ; *Hale v. Hale,* 62 *W. Va.* 609, 59 *S. E.* 1056 (*W. Va. Sup. Ct. of App.* 1908) ; 23 *Am. Jur.* (*Fraud and Deceit*), § 171, *pp.* 983 *et seq.;* 9 *Wigmore on Evidence* (3rd ed. 1940), § 2416, *pp.* 50 *et seq.; Note:* 37 *L. R. A.* 593, 600 *et seq.* This is particularly true where a relation of natural trust and confidence, though not strictly a fiduciary relation, exists between the parties. 5 *Williston on Contracts* (*Rev. ed.* 1937), § 1516, *pp.* 4229, 4231 *et seq.; Ibid.,* § 1488, *p.* 4154.

▇▇ Applying the foregoing principles to the record before us and guided by the rule that on a motion for judgment the trial court cannot weigh the evidence, but must take as true all evidence which supports the view of the party against whom the motion is made, and must give him the benefit of all legitimate inferences which are to be drawn therefrom in his favor, *Visaggi v. Frank's Bar and Grill, Inc.,* 4 *N. J.* 93, 98 (1950), we conclude that the issue of fraud in the execution of the releases was properly submitted to the jury and defendant's motion for judgment was rightly denied.

We come now to consider the challenged portions of the judge's charge to the jury and they are three in number. The first relates to the instruction regarding the proper method of executing corporate releases, particularly with reference to the necessity for the attachment of a corporate seal and attestation by the corporate secretary, as affecting their validity as

binding corporate acts. We will not discuss the question, however, because our conclusion with reference to the scope and effect of the instruction which is the subject of the next assignment of error makes it unnecessary so to do, as will now appear.

At the close of the charge the trial judge proceeded to dispose of the plaintiff's requests to charge (none was submitted by the defendant) and in so doing charged its third request as follows:

"The defendant has not proved that there was any consideration for the so-called release signed by Peter W. Kero, Inc., and it having been executed and delivered without any consideration, it is no bar to Peter W. Kero, Inc. to collect any moneys that you may find to be due to it from Terminal Construction Corporation. I so charge you."

Defendant now agrees that this instruction is erroneous because (1) it related to an issue which had not been pleaded nor stated in the pretrial order, and (2) it was contrary to the evidence before the court and jury. Without conceding that the issue of consideration was not within the broad terms of the amendment to the pretrial order hereinabove quoted, suffice it to say that no objection whatever was made by the defendant to this instruction in compliance with *Rule* 3:51 which provides, *inter alia,* as follows:

"No party may urge as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

The defendant had ample opportunity to object to the instruction in question and state the reasons therefor at the trial, and, having failed to do so, may not question the propriety thereof on this appeal. *J. B. Wolfe, Inc., v. Salkind,* 3 *N. J.* 312, 316 (1949); *Nusser v. United Parcel Service of New York, Inc.,* 3 *N. J. Super.* 64, 70 (*App. Div.* 1949).

Therefore, since the instruments in question were not under seal and for that reason ineffectual to bar plaintiff's

claim unless supported by a valuable consideration, *Hochman v. Zigler's, Inc.,* 139 *N. J. Eq.* 139, 141 (*Ch.* 1946); *Braden v. Ward,* 42 *N. J. L.* 518, 523 (*Sup. Ct.* 1880); *Traphagen v. Voorhees,* 44 *N. J. Eq.* 21, 30 (*Ch.* 1888); *Murphy v. Kastner,* 50 *N. J. Eq.* 214, 230 (*Ch.* 1892); *Restatement, Contracts,* § 402, *p.* 757, the foregoing instruction completely removed the questioned releases from the case as constituting any bar whatsoever to the plaintiff's action, regardless of whether or not they were validly executed (as questioned in plaintiff's first assignment of error hereinabove referred to) or were procured by fraud and deceit.

The final assignment of error is to that part of the charge where the judge said:

"Just a word about the words, 'Paid in full' upon a check. Under the law, one cannot avoid payment of an indebtedness by giving a check and writing the words 'Paid in full' upon it. It is a presumptive piece of evidence showing that an indebtedness has been paid in full, but the parties to the obligation, a creditor, can go behind such a writing on a check and show what the facts really are."

Defendant made timely objection to this part of the charge but the grounds of the objection were not clearly stated. Apparently the contention at the time was that in view of the fact there were two contracts before the court covering the same work but at different prices, the acceptance of the last check in the amount of $4,500 with the notation "Pd-in-full" thereon, making the total payments $9,500, tended to corroborate the defendant's contention that the true understanding of the parties was expressed in the $9,500 contract which the check in question was intended to discharge, and that the jury should have been so instructed. We find no error in the court's instruction with respect to this particular matter.

Counsel for the defendant also complains with respect to this particular instruction that it is incomplete and should have expounded the principle of accord and satisfaction as bearing upon the question of the payment of defendant's obligation. This contention is not sustainable, however, for several reasons; the issue of accord and satisfaction was not

raised as an affirmative defense in the answer as required by
*Rule* 3:8–3; nor embraced in the pretrial order, *Rule* 3:16;
nor distinctly stated as a ground of objection to the charge
as delivered, *Rule* 3:51, and there was no request to charge
upon the subject.

The judgment below is accordingly affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices
CASE, HEHER, OLIPHANT, BURLING and ACKERSON—6.

*For reversal*—Justice WACHENFELD—1.