405 P.2d 488

**UNITED BENEFIT FIRE INSURANCE COMPANY, a Nebraska corporation, Appellant,**

v.

**FIRST NATIONAL BANK OF ARIZONA, PHOENIX, a national banking association, Appellee.***

**I CA–CIV 72.**

Court of Appeals of Arizona.

Sept. 9, 1965.

---

* This appeal was filed with the Arizona Supreme Court and assigned that Court's number 8029. The matter was referred to this Court pursuant to Section 12–120.-23 A.R.S.

Cavness, DeRose & Senner, by Tom C. Foster, Phoenix, for appellant.

Kramer, Roche, Burch & Streich, by Charles L. Hardy, Phoenix, for appellee.

DONOFRIO, Judge.

This is an appeal by one of the defendants below, United Benefit Fire Insurance Company, a Nebraska corporation, from a judgment against it in favor of appellee, First National Bank of Arizona, who was the plaintiff below, and from the order denying said defendant's motion for new trial.

The action was instituted by the appellee bank against the Dealers Auto Auction, Inc. (hereafter also referred to as Dealers) and the appellant which was the surety on the bond. Dealers was in the automobile auction business and posted the bond with the Highway Department in compliance with Section 28–1305, subsec. B, A.R.S. when applying for its license.

The facts are: In April 1961, an account was opened with the plaintiff bank in the name of Dealers Auto Auction, Inc. The principals of Dealers were Mr. Hershell Bonner and Mr. Lafe A. Ellsworth, who requested the bank to give them immediate credit when envelope sight drafts were presented to the bank for collection. The bank was unwilling to extend this credit. They were then approached by a prominent citizen in Phoenix, who offered to guarantee the bank against any loss up to $15,000, which was refused. They were later approached by Mr. Brown, a valued customer of the bank, who vouched for the principals of Dealers and offered to guarantee the bank against any loss up to $15,000. Mr. Brown provided the bank with a written guaranty whereupon the bank proceeded to give immediate credit to Dealers when sight drafts were presented to it for collection.

The drafts used were ordinary large manila envelopes with the customary sight draft printed on the face of the envelope. When Dealers sold an automobile at auction it would by its agent sign a purchase order which together with instruments transferring title would be inserted into the sight draft envelope. The draft (printed on the face) would then be filled in and presented to the bank for collection. When presented the bank would give immediate credit to the account. At the time such envelopes are presented to the bank for collection they are customarily sealed. A large number of such envelopes running into the hundreds of envelopes were presented to the bank for which the bank gave immediate credit.

In June 1961, ten such envelope drafts were returned to the bank as unpaid and the Assistant Manager of the Branch where the account was carried arranged a meeting with Ellsworth and Brown. Each of the envelope drafts was opened in their presence and it was discovered that none contained any type of automobile title or bill of sale.

This action was brought by the bank to recover the amounts credited by reason of the unpaid drafts. The original amount was reduced before trial by $15,000 which was paid by Mr. Brown under the guaranty. The net amount due for which the bank recovered judgment was $4,527.45.

The cause of action was based on fraud. The fraud alleged was that Dealers represented that the sealed envelopes contained certificates of title to automobiles properly assigned to the drawee named in said sight drafts, together with such other documents and instruments as were necessary and proper to convey good title to each of said motor vehicles to the purchaser thereof. In truth and in fact said envelopes did not contain certificates of title to motor vehicles nor any other documents or instruments necessary to convey such title. Said envelopes contained pieces of paper which had no legal significance. Relying upon the representations of the defendant Dealers and the prior transactions between the parties, plaintiff accepted said sight drafts and gave Dealers immediate credit therefor.

The Court found in favor of the plaintiff on these allegations and entered judgment against appellant on the surety bond.

Appellant contends that the statutes did not impose any liability upon the surety for the acts of the licensee in this case.

■ The Supreme Court and our court have had occasion to interpret the liability of a surety under Section 28–1305, subsec. B (supra) in Commercial Standard Ins. Co. v. West, 74 Ariz. 359, 249 P.2d 830 (1952); Phoenix Auto Auction, Inc. v. State Automobile Ins. Ass'n, 86 Ariz. 337, 346 P.2d 146 (1959); and Western Surety Company v. Clauss, 1 Ariz.App. 224, 401 P.2d 178 (1965). Said Statute provides that the surety bond shall inure to the benefit of any person who suffers loss by reason of *any unlawful* act of the licensee. In the hereinabove cited cases we have interpreted the term "unlawful act" to mean a wrongful act, or a tort—any wrongful act (not involving a breach of contract) for which a civil action will lie. We believe the loss herein alleged was intended to be covered by the statute.

■ Appellant next urges that the evidence presented was insufficient to make out a case of actionable fraud. We agree with its contention that there can be no actionable fraud without a concurrence of all nine elements of fraud which include a representation, the hearer's reliance on its truth and his right to rely thereon. Law v. Sidney, 47 Ariz. 1, 53 P.2d 64 (1936); Cullison v. Pride O'Texas Citrus Assn., 88 Ariz. 257, 355 P.2d 898 (1960).

The question presented is whether under the circumstances of this case the bank had a right to rely on the implied representations that all of the necessary documents were contained in the envelope when an examination of the contents would have disclosed that ineffectual pieces of paper were enclosed therein.

Appellant contends that the bank had no right to rely upon the representations. That it should have examined the draft and made further inquiry before giving credit thereon.

■ A sight draft is a bill of exchange for the immediate collection of money. In the instant case each draft was drawn by Dealers on a presumed purchaser of an automobile as drawee and made payable to the plaintiff bank. When presented to the bank a receipt was issued therefor and the draft envelope with an advice and instruction sheet was then forwarded to a bank located where the drawee resided, for drawee's acceptance and payment. Contained in the envelope, which was usually sealed, were the necessary documents required by the drawee. If unclaimed or not paid it was then returned. Until those giving rise to the present case, many such drafts, numbering into the hundreds of drafts, presumably with the necessary documents enclosed therein had been deposited with the bank and when presented to the drawees were regularly paid.

The manager of the branch bank testified that it was customary practice in banking for a bank to accept a sealed envelope draft and give immediate credit on the basis of that draft. It was brought out that the bank had given immediate credit because of the recommendations as to the integrity of the individuals by Mr. Brown, together with the fact that it had a guaranty from Mr. Brown up to $15,000.

■ Considering the customary practice of the bank in handling sight drafts and particularly the method in which these drafts were handled, we believe the trial court could properly decide that the bank had a right to rely and did rely on the implied representations. The fact that Mr. Brown gave his guaranty before the bank would extend credit to this new corporation should make no difference, particularly, since Mr. Brown recommended the integrity of the individual principals. The bank relied on both the guaranty of collection and the reputed integrity of the principals. There was evidence showing that the envelopes containing false documentation were deliberately presented to the bank with an intent to deceive it. At the time of the discovery of the deception, Ellsworth stated "if this just had gone a few more days all of this would have been cleared up."

■ One who has intentionally deceived another to his prejudice is not to be heard to say, in defense of a charge of fraud, that the innocent person ought not to have trusted him, unless such trust is manifestly unreasonable. Seeger v. Odell (1941) 18 Cal.2d 409, 115 P.2d 977, 136 A.L.R. 1291; Peter W. Kero, Inc. v. Terminal Construction Corp. (1951) 6 N.J. 361, 78 A.2d 814; Joiner v. McCullers (1947) 158 Fla. 562, 28 So.2d 823; Marino v. Northern Pac. Ry. Co. (1937) 199 Minn. 369, 272 N.W. 267; Davis v. Forman (1910) 229 Mo. 27, 129 S.W. 213; 23 Am.Jur. 963, Fraud and Deceit, Sec. 155; Annotations 33 A.L.R. 903 and 61 A.L.R. 497.

■ The evidence established the existence of all nine elements of fraud. Such fraud was an "unlawful act" within the purview of the conditions of the bond.

Affirmed.

STEVENS, C. J., and CAMERON, J., concur.