427 P.2d 146

**UNION BANK, an Arizona corporation,
Appellant,**

**v.**

**Murray D. SAFANIE et al., partners under
the firm name and style of Shearson, Ham-
mill & Co., a partnership, Appellees.**

**No. 2 CA–CIV 203.**

Court of Appeals of Arizona.

May 1, 1967.

Rehearing Denied June 19, 1967.

Review Denied Sept. 21, 1967.

Hall, Jones, Hannah, Trachta & Birdsall, by Ben C. Birdsall, Tucson, for appellant.

Dunseath, Stubbs & Burch, by Dean Burch and Robert B. Buchanan, Tucson, for appellees.

HATHAWAY, Chief Judge.

This appeal arises out of a civil action wherein the appellees, as plaintiffs, recovered damages which resulted from the alleged misrepresentation by appellant, defendant therein, concerning a check drawn on the defendant bank by a third person. The plaintiffs' claim for damages was submitted to a jury upon theories of fraud, negligence and estoppel. The jury returned a verdict in the amount of $23,261.14 in favor of the plaintiffs and from the judgment entered thereon the defendant bank has appealed.

The following are the pertinent facts: The plaintiffs, a nation-wide stock brokerage partnership, maintained an office in Tucson. The defendant-bank was an Arizona corporation operating in Tucson. Kenneth E. Parker was a customer of both parties. During 1963, Mr. Parker had bought and sold stocks for his account with the plaintiffs in an amount exceeding $450,000 and had always made timely payment on his stock purchases.

On April 10, 1964, Mr. Parker purchased one thousand shares of Syntex stock through the plaintiffs at a total cost of $85,224.77. Initially the transaction was undertaken as a "day trade" in contem-

plation that the stock would be sold on the same day with a quick profit. The "day trade" plan was abandoned and the stock was transferred from Mr. Parker's margin account to his cash account. He was advised by the plaintiffs that he had until the 16th of April to make payment in full for the stock purchased. (The rules and regulations of the Federal Reserve Board, however, permitted an extension for payment until April 21.)

On the 15th, Parker informed plaintiffs that he was waiting for funds from an estate and requested additional time for payment. On the 20th, Parker was advised by the plaintiffs that if payment was not made by 11 a. m. on the 21st, all stocks then held for him by the plaintiffs, including the Syntex stock, would be sold and applied on his account at that time.

On April 21, Mr. Parker borrowed $39,600 from the defendant on an unsecured note to pay for stock purchased from E. F. Hutton and Company, another stock brokerage firm doing business in Tucson. He also requested a loan of $85,000 to pay for the purchase of the Syntex stock. He told the president of the bank that he was going to receive approximately $100,000 in the very near future from his mother's estate in Indiana and that he needed $85,000 to pay the plaintiffs that day. The bank president told him that the loan would be considered and an assignment of the inheritance was prepared which he signed. He was advised to call his brother and request a wire confirming the existence of the inheritance in order to expedite the loan. The bank president called the plaintiffs' representative who handled the Parker account. The representative was not in at the time but shortly thereafter returned the call. Although at the trial the bank president adamantly denied having made such statement, the plaintiffs' representative testified that he was told by the president:

"Ken Parker will be in to see you with a check for $85,000. Go ahead and run it through. It will clear when it gets here."

Later that morning, after this telephone conversation, Mr. Parker went to the plaintiffs' offices and wrote a check for the amount due on the Syntex stock. On April 23, payment of the check, which was deposited in the ordinary course of business, was refused. Plaintiffs, however, had not liquidated Parker's account on April 21 since his check was received. (His bank balance was actually about $2,200.)

Had the Parker account been liquidated at 11 a. m. on the 21st, the plaintiffs would not have suffered loss, despite the fact that sale of the 1,000 shares of Syntex would have resulted in a $10,656.47 loss, because the plaintiffs held other securities for Parker. On April 23, prior to the bank's refusal of the subject check, Mr. Parker transacted through the plaintiffs another "day trade" of five thousand shares of Texas Gulf Sulpher stock. (These shares were later sold for the Parker account at a loss of $15,814.58.) Although this purchase was considerably larger than any previously made for Parker, the plaintiffs explained that they relied upon the $85,000 worth of Syntex stock and approximately $12,000 additional security in the account.

Later the same day after learning that Parker had sustained a $20,000 loss at E. F. Hutton and Company, the president of the defendant bank instructed an employee to refuse payment for insufficient funds of the $85,244.77 check, which had been presented for payment. He also notified the plaintiffs by telephone that the check would not be honored. On the opening of business the following morning, the plaintiffs sold the Parker stock and received an amount which was $23,261.14 less than the amount necessary to pay what was owed to plaintiffs. This amount was awarded by the jury to the plaintiffs as damages.

The following questions are presented for review:

1. Is a bank liable to the promissee when it orally promises to pay a check for a depositor whose account does not contain sufficient funds to cover the check?

2. Was plaintiffs' loss on the Texas Gulf Sulphur transaction properly includible as an element of damages?

3. Was reversible error committed in:

(a) Allowing evidence concerning defendant's recoveries from Mr. Parker on other obligations.

(b) Failure to require plaintiffs to join Mr. Parker as a defendant.

(c) Allowance of Parker's deposition into evidence.

## LIABILITY

■■■ The case was submitted to the jury on the theories of fraud, negligence and estoppel. Defendant's position in the trial court, and reiterated on appeal, was that its promise to pay the check upon presentment was not actionable since it was not in writing as required by the Statute of Frauds[1] and the Uniform Negotiable Instruments Law.[2] Plaintiffs, on the other hand, argue that recovery was not sought on the basis of a contractual arrangement, but rather for a tortious act, therefore rendering inapplicable the foregoing statutes requiring a writing. They further contend that if the statutes did apply, the defendant was estopped from asserting them as a bar to the action.

The trial court refused to give defendant's proffered instructions as to the Statute of Frauds and the requirement that the bank could be liable only if an acceptance were in writing. We believe the court was correct in so refusing since plaintiffs were not seeking to recover from defendant on a "promise to pay the debt of another" or because of acceptance of the check. In substance, the statement made to plaintiffs' account representative who was handling the Parker transaction, was a representation as to Parker's credit with the bank, i. e., that there would be sufficient funds to cover the check when presented. Such representations do not fall within the purview of A.R.S. § 44–101, subsec. 2 requiring a writing. See 37 C.J.S. Frauds, Statute of § 32 and cases cited in note 7. The provision of the N.I.L. negating the drawee's liability to the *holder* of a check unless the drawee has accepted the check in writing or certified it is likewise inapplicable since plaintiffs were not seeking recovery on the check.

The Uniform Commercial Code, Section 3–409(2) now adopted in Arizona, effective January 1, 1968, Senate Bill 23, provides:

"Nothing in this section [acceptance provisions] shall affect any liability in contract, tort or otherwise arising from any letter of credit or other obligation or representation which is not an acceptance."

Comment 3 to Section 3–409 states:

"Subsec. (2) is new. It is intended to make it clear that this section does not in any way affect any liability which may arise apart from the instrument itself. * * * He [the drawee] may be liable in tort or upon any other basis because of his representation that he has accepted, or that he intends to accept. The section leaves unaffected any liability of any kind apart from the instrument."

---

1. A.R.S. § 44–101, subsec. 2 provides:
 "To charge a person upon a promise to answer for the debt, default or miscarriage of another."

2. A.R.S. § 44–585 provides:
 "A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this chapter applicable to a bill of exchange payable on demand apply to a check."
 A.R.S. § 44–589 provides:
 "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check."
 A.R.S. § 44–532 provides:
 "The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee will perform his promise by any other means than the payment of money."

· It· is pointed out in 10 Am.Jur.2d Banks § 568 that the code provisions clarify the interpretation to be placed on the Uniform Negotiable Instruments Act:

"It is to be noted that while the Uniform Negotiable Instruments Act, after providing that a check does not of itself operate as an assignment of any part of the funds to the credit of the drawer with the bank, further provides that the bank is not liable to the holder unless and until it accepts or certifies the check, the Uniform Commercial Code, in the analogous section, further provides that the drawee is not liable 'on the instrument' until he accepts it. As explained in the Official Code Comment, the original language of the Uniform Negotiable Instruments Act that the drawee is not liable 'to the holder' has been changed as inaccurate and not intended. That is, the drawee is not liable *on the instrument* until he accepts, but he remains subject to any other liability to the holder * * *."

 It is well settled in this jurisdiction that there is no actionable fraud without a concurrence of all nine elements thereof. Nielson v. Flashberg, 101 Ariz. 335, 419 P.2d 514 (1966); Gallagher Construction Co. v. Viking Supply Corp., 3 Ariz.App. 55, 411 P.2d 814 (1966). Viewing the evidence most favorably in support of the judgment, we believe there was sufficient evidence upon which the trier of fact could find the defendant liable for fraud and deceit.

 The grounds of defendant's attack on the trial court's submission of the fraud issue to the jury are: (1) the trial court's refusal to instruct that "intent to deceive" is a required element of fraud and (2) lack of evidence of plaintiffs' right to rely on defendant's misrepresentation.

The trial court instructed the jury as follows:

"In order to prove actionable fraud within the meaning of the law the plaintiffs must show by clear and convincing evidence the nine essential elements of fraud; namely, first, that the defendants made the particular misrepresentation charged by the plaintiffs. Second, that the representation was false. Third, that the representation made was material. Fourth, that when the misrepresentation was made the defendants knew it was false or were ignorant of its truth. Fifth, that the defendants intended that the misrepresentation should be acted upon by the plaintiffs and that it should be acted upon in a manner reasonably contemplated by the defendant. Sixth, that the plaintiffs did not know the misrepresentation was false. Seventh, that the plaintiffs relied on the misrepresentation as though it were the truth. Eighth, that the plaintiffs had a right to reply on the misrepresentation. And ninth, that the plaintiffs suffered damages as the consequential and proximate result of the misrepresentation."

It is thus readily seen that the trial court's instruction clearly propounded the nine requisite elements, as defined by our Arizona cases. Defendant correctly argues that an intent to deceive is a prerequisite to actionable fraud. 23 Am.Jur. Fraud and Deceit § 117. However, if the speaker's words were intended to cause the hearer to act in reliance thereon, i. e., if it was intended that the hearer's conduct be influenced, an intent to deceive may be inferred. Restatement, Torts § 531; 37 C.J.S. Fraud § 22(b) (1). The trial court's other instructions referred to the element of intention that the representee act or refrain from acting in reliance on the misrepresentation. Defendant's requested instructions would have added nothing as the jury was properly instructed as to the essential elements of fraud. Therefore the trial court's refusal to give them was not error. Gibbons v. Williams, 93 Ariz. 116, 119, 378 P.2d 926 (1963).

 Defendant's challenge to the sufficiency of the evidence of plaintiffs' "right to rely" is likewise untenable. The following testimony was elicited from the bank

president who made the telephone call relative to Parker's check:

"Q Now, in the banking business, Mr. Lininger, the bank often gives financial information to businessmen around the community, does it not?

"A Yes.

"Q On its clients?

"A Yes.

"Q And, of course, you get a release from your client to give that information?

"A No.

"Q Normally. But whether you do or not you do give financial information?

"A Yes.

"Q You understand that businessmen, when they ask for financial information from the bank, tend to rely on it as being accurate information? Isn't that correct?

"A Yes.

"Q And this is done in the usual course of your business as a banker?

"A Yes.

"Q That you give financial information to businessmen so that they may understand better how to transact their business with a particular individual?"

Where a confidential relationship exists between two parties, a party may rely on the other's representations without investigating their truth. 37 C.J.S. Fraud § 35. It has been held that a bank, in its capacity as financial adviser to a depositor, may be subject to the rules applying to confidential relations. See Stewart v. Phoenix National Bank, 49 Ariz. 34, 64 P.2d 101 (1937). We have previously indicated in Miller v. Boeger, 1 Ariz.App. 554, 559, 405 P.2d 573 (1965), that the general trend of the law in fraud cases is away from holding that a plaintiff, who fails to make his own investigation, may not recover.

The Restatement, Torts § 540 states:

"The recipient in a business transaction of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation."

We believe that where the defendant had adopted a practice of imparting credit information to local businessmen, it should not complain that plaintiffs ought not to have trusted such information, unless such trust was manifestly unreasonable. See United Benefit Fire Ins. Co. v. First Nat. Bank of Arizona, 1 Ariz.App. 550, 405 P.2d 488 (1965). A fortiori where the defendant's officer undertook to volunteer the information rather than merely disclose it in response to an inquiry. Since the jury could have found that these circumstances justified reliance, the question was properly left to their determination. 37 C.J.S. Fraud § 129, p. 455.

We find there was sufficient evidence of each element of fraud to submit the question of defendant's liability to the jury:

1. A representation as to Mr. Parker's financial condition. Defendant's president stated that "the check would clear" indicating there either were or would be sufficient funds in Parker's account to cover the check.

2. Its falsity. Parker's credit account was approximately $2,000.

3. Its materiality. The Parker account with plaintiffs was dependent upon payment on the 21st of April, the date of the representation.

4. Knowledge of its falsity or ignorance of the truth. Defendant's president knew that there would be sufficient funds *only* if a condition occurred, i. e., if the bank approved a loan to Parker upon receipt of confirmation of his inheritance from his mother's estate.

5. Intent that it should be acted upon by the hearer and in the manner contemplated. The very purpose of the

phone call by defendant's president was to prevent the Parker account from being liquidated.

6. Hearer's ignorance of its falsity. The plaintiffs could not be aware of the status of Parker's checking account.

7. His reliance on its truth. The plaintiffs accepted the check in payment for the Syntex stock.

8. His right to rely. (Discussed above)

9. His consequent injury. If the plaintiffs had liquidated the Parker account on April 21st, they held enough securities for Parker to cover the amount due them for the Syntex purchase.

## DAMAGES

 The defendant contends that the jury should not have been permitted to consider the loss on the Texas Gulf Sulphur trade. The thrust of defendant's argument is that the subject loss was not attributable to it but rather to two intervening acts over which it had no control:

1. The "unfortunate sale" by the plaintiffs.

2. The market decline of the stock which was purchased.

The defendant requested that the jury be instructed to disregard any loss sustained by the plaintiffs by virtue of the Texas Gulf Sulphur transaction, which the trial court refused to do. As a general rule, and defendant agrees, a plaintiff may recover damages for any injury which is the direct and natural consequence of his acting on the faith of the defendant's representations. 37 C.J.S. Fraud § 141(a); 24 Am.Jur. Fraud and Deceit § 218. The jury was properly instructed on the definition of proximate cause and further instructed that a cause is not proximate if there is any efficient intervening cause which produced the claimed damage. The defendant did not request a further instruction as to intervening causation, and therefore cannot now complain. Salinas v. Kahn, 2 Ariz.App. 181, 191, 407 P.2d 120, modified 2 Ariz.App. 348, 409

P.2d 64 (1965); Patania v. Silverstone, 3 Ariz.App. 424, 415 P.2d 139 (1966).

It cannot be said as a matter of law that the defendant could not foresee that the plaintiffs, in reliance upon its representation as to Parker's check, would enter into additional stock transactions with Parker. Parker's exploits in "day trading" were known to the bank president.

A jury might well find that it could reasonably be anticipated that plaintiffs, holding in excess of $85,000 worth of securities for Parker's account (presumably fully paid for) would transact another "day trade" involving stock of a speculative nature. The question of whether the additional loss was a proximate consequence of the fraud was therefore properly submitted to the jury and we find no error in that regard.

## ERRORS IN TRIAL OF CASE

██ Defendant complains that the trial court permitted the bank president to testify, over defendant's objection, concerning the bank's activities with regard to Parker's account and certain collateral held by it. He testified to the effect that the bank, after refusing to honor the check given to the plaintiffs, sold the collateral security and applied the proceeds and the balance in Parker's checking account against Parker's notes to the bank which were not delinquent. Plaintiffs' counsel responded to the objection of irrelevancy by stating:

> "* * * I don't think it's irrelevant and immaterial because as we will discuss later this may go to the question of restitution which, although not pleaded I think under the facts we are entitled to get into * * *."

No amendment concerning restitution was ever offered by the plaintiffs nor did defendant move that the testimony be stricken and the jury instructed to disregard it. Defendant's failure to protect itself by renewing its objection in the form of a motion to strike precludes appellate consideration of the admissibility of the testimony. See 6 Wigmore, Evidence § 1871; Williams v. Hagans, 56 Ariz. 83, 105 P.2d.

958 (1940); Anno. 88 A.L.R.2d 12 § 4 and cases cited therein; McCormick, Evidence § 58.

█ Defendant predicates an additional claim of error on the trial court's adverse rulings relative to its various motions for relief on the grounds that plaintiffs had failed to join Mr. Parker, an indispensable party under A.R.C.P. Rule 17(f), 16 A.R.S. which provides:

"The assignor, endorser, guarantor and surety upon a contract, and the drawer of a bill which has been accepted, may be sued without the maker, acceptor or other principal obligor when the latter resides beyond the limits of the state, or in such part of the state that he cannot be reached by ordinary process of law, or when his residence is unknown and cannot be ascertained by the use of reasonable diligence, or when he is dead, or insolvent."

We find no merit to defendant's argument since, as we have previously indicated, plaintiffs' claim was not predicated upon defendant's liability as an acceptor or guarantor.

█ Defendant's final contention of error is the trial court's allowing the plaintiffs to introduce into evidence the deposition of Mr. Parker. Plaintiffs subpoenaed Parker as a witness but when called to the witness stand, he refused to answer any questions concerning the transactions between plaintiffs and defendant on the ground that his answers might tend to incriminate him. Plaintiffs' counsel then requested permission to use Parker's deposition, claiming that the situation was an "exceptional circumstance" within the purview of A.R.C.P. Rule 26(d) (3) (v) which provides:

"At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice

thereof, in accordance with any one of the following provisions:

* * * * * *

"Upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used."

Defendant's counsel objected to the admission of the deposition upon the grounds that the application was untimely, there was no time to resist it and the notice was insufficient. Further objection was made that Mr. Parker's refusal to testify, honored by the court, did not constitute exceptional circumstances. On appeal, defendant reiterates that such notice is not what the statute means and claims, for the first time, that it was prejudiced by not having an opportunity to cross-examine Parker before the jury.

Evidence by deposition is freely admissible where the conditions prescribed in Rule 26(d) (3) are met. Derewecki v. Penna. R. R. Co., 353 F.2d 436 (3d Cir. 1965); B. F. Goodrich Tire Co. v. Lyster, 328 F.2d 411 (5th Cir. 1964); Re-Trac Corp. v. J. W. Speaker Corp., 212 F.Supp. 164 (1962).

We conclude that the trial court did not err in finding that such exceptional circumstances were shown as to make it desirable, in the furtherance of justice, to allow Parker's deposition to be used in the trial. A somewhat analogous situation arose in Odell v. Miller, D.C., 10 F.R.D. 528 (1950), where the defendants were allowed to use the deposition of another named defendant whose deposition was taken, upon notice, two days before trial, in Indiana (the case was tried in Michigan) for the reason that if said defendant returned to Michigan, he would be arrested. The defendants successfully contended that such apprehension of arrest constituted exceptional circumstances justifying the taking of the deposition in Indiana and its use at the trial.

In Rosenthal v. Peoples Cab Co., D.C., 26 F.R.D. 116 (1960) and Derewecki v. Pen-

**350**

na. R. R. Co., supra, lack of opportunity to cross-examine was urged in opposition to admission of deposition into evidence. Both federal courts held in favor of admissibility, pointing out the need to weigh the right of cross-examination against the right of a party to maintain his suit when the deponent's testimony is essential. It is our conclusion that Parker's deposition was essential to plaintiffs' case and Rule 26(d) (3) should be construed "to secure the just, speedy, and inexpensive determination of every action." A.R.C.P. Rule 1.

 Defendant's complaint as to lack of timeliness of the application and insufficiency of the notice was but one factor to be weighed in balancing the interests of the parties. There is no time requirement set forth in Rule 26(d) (3) and we cannot see any dereliction on plaintiffs' part in this regard. Surely it cannot be argued that use of the deposition at trial could have been requested prior to the occurrence of the "exceptional circumstance" of Mr. Parker's refusal to testify. It is worthy of note that the federal cases point out that the trial court's admission of a deposition for the jury's consideration should be subject to cautionary instructions. See Inland Bonding Co. v. Mainland National Bank of Pleasantville, D.C., 3 F.R.D. 438 (1944); Derewecki v. Penna. R. R. Co., supra; Rosenthal v. Peoples Cab Co., supra. Defendant, however, requested no such cautionary instruction, so we are not called upon to determine the effect of failure to so instruct.

Finding no basis for reversal, the judgment is affirmed.

KRUCKER, J., and ROBERT O. ROYLSTON, Superior Court Judge, concur.

NOTE: Judge JOHN F. MOLLOY having requested that he be relieved from consideration of this matter, Judge ROBERT O. ROYLSTON was called to sit in his stead and participate in the determination of this decision.