BRADLEY, Judge.
This appeal arises out of a civil action in the Circuit Court of Calhoun County. Appellee, Long-Lewis Hardware Company, recovered damages on the basis of a statement made by an employee of First City National Bank of Oxford, Alabama to a representative of Long-Lewis concerning a check drawn on the appellant bank by a third person. After the presentation of evidence by both parties, Long-Lewis’ claim for damages was submitted to a jury. The jury rendered a verdict in favor of Long-Lewis in the amount of $6,150.40. From the judgment entered on Long-Lewis’ cause of action the bank appeals.
The record before us reveals the following facts. Bonnie Reese purchased a new car from Long-Lewis Ford in Bessemer, Alabama. At that time Mrs. Reese informed the salesman for Long-Lewis that she had obtained a loan with the First City National Bank of Oxford in order to pay the automobile’s purchase price of $5,380.00. The following day the salesman for Long-Lewis went to Oxford to finalize the financing of the transaction between Mrs. Reese and Long-Lewis. The salesman was instructed by his supervisor to obtain a certified check from the bank for the payment of the automobile; however, he returned to Bessemer without obtaining a certified check because the arrangements for the loan had not actually been completed.
Two days after her initial contact with Long-Lewis, Mrs. Reese returned to the firm’s automobile sales lot with a bank deposit slip for the sum of $5,680.00 and a security agreement signed by First City National Bank demonstrating that she had in fact obtained a loan from the bank. Upon showing these documents to the sales manager for Long-Lewis, she asked to write a personal check for the purchase price of the car. The sales manager then telephoned the bank and was informed by a bank employee that the account of Mrs. Reese contained sufficient funds to cover her check. In reliance on this information, Long-Lewis accepted a personal check from Mrs. Reese in the amount of $5,680.00.[1]
When the cheek reached First City Bank several days later, it was dishonored. Upon learning that Mrs. Reese’s check had been dishonored, the sales manager for Long-Lewis again telephoned the bank and spoke to the same employee with whom the sales manager had had his earlier conversation. During this conversation, the bank employee informed the sales manager that the funds from the loan had originally been deposited in Mrs. Reese’s account. However, he stated that the bank had subsequently learned that Mrs. Reese had: (1) misrepresented the purchase price of the automobile to the bank; and (2) told the bank that she had never had any personal property repossessed, when in fact she had been subjected to two prior repossessions. The bank employee further informed the sales manager that as a result of these misrepresentations by Mrs. Reese, First City National had (pursuant to its security agreement with her) applied the funds from her account to the balance due on her loan with the bank. Thus, the sales manager for Long-Lewis learned that the funds on which the check to Long-Lewis was drawn had been removed.
Subsequent efforts by Long-Lewis to recover the sales price of the automobile from the bank were unsuccessful. Moreover, Mrs. Reese disappeared and Long-Lewis never recovered the automobile in question.
As a consequence of these events, Long-Lewis brought a civil action for fraud and misrepresentation against First City National Bank. After a trial on the merits of *765 the suit, judgment was rendered for Long-Lewis and First City National appeals.
The bank’s initial argument is that since the bank never accepted the check issued by Mrs. Reese to Long-Lewis, it incurred no liability on the instrument and therefore the jury’s verdict was incorrect.
The Uniform Commercial Code, Title 7, section 3-409(1), Code of Alabama 1975, provides that a “drawee is not liable on [an] instrument until he accepts it.” Moreover, a check or draft is not accepted by a bank for payment unless the bank actually pays out on the instrument, U.C.C., Title 7, section 3-418; agrees to accept it in writing, U.C.C., Title 7, section 3-410; or indicates by certification that the instrument has been accepted, U.C.C., Title 7, section 3 — 411. None of these events occurred in the present case. Consequently, there was no acceptance by First City National of the check issued to Long-Lewis by Mrs. Reese. However, the suit by Long-Lewis against the bank is encompassed by the language of the Uniform Commercial Code, Title 7, section 3 — 409(2) which states that:
“Nothing in this section shall affect any liability in contract, tort or otherwise arising from any letter of credit or other obligation or representation which is not an acceptance.”
Of course, a bank employee’s representation that a drawer’s check is good applies only to the situation at that time and the law properly allows dishonor if the drawer’s account contains insufficient funds at the time the instrument is presented for payment, Peoples Bank in North Fort Myers v. Bob Lincoln, Inc., 13 U.C.C.Rep. 672, 283 So.2d 400 (Fla.App.1973); nevertheless, circumstances involving the issuing of a check and its subsequent dishonor may give rise to an independent cause of action. Peoples Bank in North Fort Myers v. Bob Lincoln, Inc., supra. See Union Bank v. Safanie, 5 Ariz. App. 342, 427 P.2d 146 (1967) (holding the bank liable on a complaint alleging fraud, negligence and estoppel). Indeed, comment 3 to section 3-409 states:
“Subsection (2) is new. It is intended to make it clear that this section does not in any way affect any liability which may arise apart from the instrument itself. The drawee who fails to accept may be liable to the drawer or to the holder for breach of the terms of a letter of credit or any other agreement by which he is obligated to accept. He may be liable in tort or upon any other basis because of his representation that he has accepted, or that he intends to accept. The section leaves unaffected any liability of any kind apart from the instrument.”
In the present case the trial court refused to give the bank’s proffered instructions as to its contention that the bank could be liable only if an acceptance of the instrument by the bank was in writing. We believe the court was correct in refusing to instruct the jury in this manner in view of the fact that Long-Lewis was not seeking to recover damages from the bank under section 3 — 409(1) or because of the latter’s refusal to accept the instrument.
Thus, the provisions of the Uniform Commercial Code negating a drawee’s liability to the holder of a check unless the drawee has accepted the check in writing or certified it, was inapplicable in this instance since the suit by Long-Lewis was based on its contention that the bank’s liability exis ted apart from the check itself.
Accordingly, the second issue presented for review to this court involves whether the verdict rendered by the jury on behalf of Long-Lewis can be sustained on the basis of tort or contractual theories of liability arising apart from an action on the instrument itself.
As stated earlier, the initial complaint filed by Long-Lewis charged First City National Bank with fraud. The complaint was essentially an enumeration of the events which Long-Lewis claimed gave validity to its action. The bank challenged the sufficiency of Long-Lewis’ complaint and the allegations of fraud made in that pleading.
A pre-trial conference was held on these matters and at this conference Long-Lewis again asserted, and the trial court agreed, *766 that the action by Long-Lewis should proceed on the theories of fraud or misrepresentation. The bank objected to the applicability of these theories and moved to have the suit dismissed. The trial court, however, overruled the bank’s motion to dismiss.
Other than fraud and misrepresentation, no other theories of liability were asserted by Long-Lewis as grounds for its civil suit against the bank. And throughout the presentation of its case-in-chief, Long-Lewis continuously introduced evidence which it contended warranted a finding by the jury that First City National had fraudulently misrepresented to an employee of Long-Lewis that the bank would cover the check given by Mrs. Reese to the sales personnel at Long-Lewis. However, after Long-Lewis announced that it would call no further witnesses, counsel for the bank reminded the court that he had filed a motion for a directed verdict and that this motion was based on his view that even if the jury accepted Long-Lewis’ version of the facts concerning the events and statements made by the bank employee to the sales manager of Long-Lewis, such events and statements did not constitute fraud or misrepresentation. After permitting the bank’s lawyer to complete his argument on the issue, the attorney who represented Long-Lewis urged that the bank had no right to withdraw the loan proceeds from Mrs. Reese’s account because the agreement entered into between the bank and Mrs. Reese created a “special” deposit which precluded the withdrawal of the money in that account for any purpose other than as payment to Long-Lewis for the automobile it had sold to Mrs. Reese. The attorney for Long-Lewis then read or quoted from various legal authorities defining a “special” deposit. The bank’s lawyer presented his own arguments on the matter and took the position that even if a “special” deposit had been created, the security agreement between Mrs. Reese and the bank gave the latter the express right to withdraw the loan funds from her account should the bank subsequently learn that she had made material misrepresentations to the bank.
Apparently, it was during the above described events that Long-Lewis asserted for the first time that the bank was liable under the theory of violating an agreement between the bank and its depositor to create a “special” deposit.[2] Until the occurrence of these events Long-Lewis had argued that the bank was liable to it for fraud and misrepresentation. And it is obvious that counsel for the bank was surprised by the late introduction of a new theory of liability in support of Long-Lewis’ action.
Nonetheless, after both parties completed their arguments regarding the theory of a “special” deposit, the bank put on its casein-chief and proceeded to introduce evidence demonstrating that the terms of its security agreement with Mrs. Reese gave First City National the right to withdraw the loan proceeds if it felt insecure or learned of any misrepresentations made by Mrs. Reese to the bank. The bank also proved that employees of Long-Lewis had a copy of the security agreement in their possession at the time they accepted Mrs. Reese’s personal check. Having presented this evidence, counsel for the bank announced that his client rested.
The jury was then excused while the parties made additional legal arguments to the court. Upon the conclusion of these arguments, the court informed the parties that it would not permit the case to go to the jury on the theory of fraud and misrepre *767 sentation. This theory of liability was premised on the conversation which occurred between the sales manager and the bank’s employee, and the alleged misrepresentation which took place during that conversation.
The court did, however, announce to the parties that it would allow the jury to consider whether the loan proceeds which the bank initially placed in Mrs. Reese’s account created a “special” deposit between the bank and its depositor, Mrs. Reese. Of course, the theory of a “special” deposit involved a breach of the bank’s obligation (either express or implied) to Mrs. Reese to hold the funds in the account of Mrs. Reese for the benefit of Long-Lewis. But its only relevancy in regard to the statement made by the bank to the sales manager for Long-Lewis that the funds in Mrs. Reese’s account existed for the express purpose of covering her personal check to Long-Lewis was as evidence that Mrs. Reese intended to create a “special” deposit with the bank in order to have the funds from that account applied to the purchase price of her new automobile. The conversation which occurred between the sales manager for Long-Lewis and the bank’s employee, however, had nothing whatsoever to do with whether Long-Lewis was entitled to recover as a third party beneficiary to the loan agreement between the bank and Mrs. Reese since an agreement to create a “special” deposit must exist between the bank and its depositor rather than the bank and the third party beneficiary. See First National Bank of Ashland v. Prickett, 19 Ala. App. 204, 95 So. 920 (1923).
The attorney who represented the bank recognized this fact and pointed out to the court that if a “special” deposit had indeed been created, the security agreement entered into by Mrs. Reese and the bank established not only the “special” deposit, but also the conditions which such a deposit was subject to. And the bank’s lawyer went on to note that the express provisions of the contract between Mrs. Reese and the bank authorized the bank to apply the funds in her account to the debt owed by Mrs. Reese to the bank. Consequently, the lawyer argued that on the basis of the security agreement which existed between the bank and its depositor, the bank was not liable to Long-Lewis for the dishonor of the check.
At this point in the proceedings Long-Lewis objected to the court’s refusal' to grant the written instructions which Long-Lewis had submitted on the bank’s alleged fraud and misrepresentation. First City National objected to the refusal of the trial court to charge the jury that the security agreement permitting the bank to withdraw the funds was controlling even if a “special” deposit was deemed to have been created.
After noting the objections by both parties, the trial court ordered the jury brought back in and the court proceeded with its instructions to that body, informing its members that the bank could be found liable if it was determined that the loan funds placed in the account of Mrs. Reese constituted a “special” deposit to be used for the sole purpose of paying Long-Lewis for the automobile which it had sold to Mrs. Reese. In addition, the court charged the jury that it was for its members to decide whether the loan proceeds were placed in a special account (thereby warranting a verdict in favor of Long-Lewis) or a general account (thus enabling the bank to prevail under its common law right to a lien on a general deposit).
We believe the instructions given by the trial court were incorrect. Specifically, we are compelled to hold that the court committed prejudicial error in failing to give the jury the following charge on behalf of the bank:
“11. The Court instructs the jury that even if the account of Bonnie Reese with the bank is construed a special deposit, the Defendant bank had the prior written consent of Bonnie Reese to withdraw said funds under the terms of its note from her.”
*768 And because of the court’s denial of the request by the bank that the jury be instructed in the above quoted manner, we consider the verdict rendered by the jury in favor of Long-Lewis to be erroneous.
Since the trial judge refused to submit to the jury any theory of liability other than the bank’s potential liability as a party to an agreement creating a “special” deposit, it is apparent that the jury determined that a “special” deposit had in fact been created and Long-Lewis was thereby entitled to recover as a third party beneficiary to the loan agreement between the bank and Mrs. Reese. In reaching such a determination, the jury was misled by the court’s failure to instruct its members that regardless of whether a “special” or general deposit existed, the loan proceeds were governed by Mrs. Reese’s security agreement with the bank; and that by the terms of that agreement the bank was entitled to withdraw the loan proceeds from her account and apply them to her debt with the bank. As a result of the court’s refusal to charge it in this manner, the jury disregarded an important provision in the note of indebtedness and security agreement signed by Mrs. Reese and the bank. That provision states:
“ . . . The term ‘Collateral’ as used herein, shall mean the following • property which has been or is hereby delivered, pledged, assigned, conveyed and transferred to the Holder:
“1975 Ford Torino Elite [Identification] # 5G21H128013
and any other property of every kind or description now or hereafter in the possession or control of the Holder for any reason, including all dividends and distributions on or other rights in connection with any property hereinabove referred to. Undersigned hereby warrants that sole and lawful ownership of Collateral is in the undersigned with full power and authority to transfer, convey and encumber.
“The undersigned agrees that the Holder shall have a lien upon, security title to and a security interest in the Collateral to secure the payment of this Note and all other indebtedness or liability of the undersigned to Holder, however and whenever incurred or evidenced, whether direct or indirect, absolute or contingent, or due or to become due (hereafter with this Note collectively called ‘Liabilities’). The surrender of this Note upon payment or otherwise shall not affect the right of the Holder to retain the Collateral for any other Liabilities. .
“In addition to all other rights possessed by it, the Holder, from time to time, whether before or after any of the Liabilities shall become due and payable, may (a) transfer all or any part of the Collateral into the name of the Holder or its nominee, with or without disclosing that such Collateral is subject to lien, security title and security interest hereunder; .
As this provision indicates, the bank was invested with a lien upon Mrs. Reese’s assets, including deposits in her account. No holder of a check made out by the depositor had a right to have it paid in preference to the bank’s valid lien on the loan proceeds. The security agreement which was entered into by the bank and Mrs. Reese was binding upon both parties, and the bank did not exceed the terms of the agreement when it exercised its right to take the loan proceeds deposited in the account of Mrs. Reese and apply them to the debt which she owed the bank. Thus, Long-Lewis had no valid claim against the bank on the sole theory of liability (third party beneficiary to an agreement creating a “special” deposit) considered by the jury.
Furthermore, we need not decide whether the circumstances under which the loan proceeds were placed in Mrs. Reese’s account created a “special” deposit since the bank had a right to the proceeds irrespective of whether the deposit was special or general. Georgia Bank & Trust Co. v. Hadarits, 221 Ga. 125, 143 S.E.2d 627 (1965); Hudson United Bank v. House of Supreme, Inc., 149 N.J.Super. 153, 373 A.2d 438 (1977).
*769 Indeed, the security agreement controlled in this matter because the bank’s action was authorized by the written consent of the depositor; consequently, a judgment in the bank’s favor was warranted.[3] Georgia Bank & Trust Co. v. Hadarits, supra.
The obvious purpose of the security agreement was for the bank to extend credit to the borrower (Mrs. Reese) to purchase an automobile and at the same time protect the bank against loss. The judgment rendered by the jury defeated this purpose and therefore must be reversed.
REVERSED AND REMANDED.
WRIGHT, P. J., and HOLMES, J., concur.

. The sum of $5,380.00 was applied to the purchase price of the automobile; the remaining $300 represented by the face amount shown on the check was returned to Mrs. Reese as a cash rebate.

. In the trial court (and on-appeal) Long-Lewis claimed that since the money deposited in the account of Mrs. Reese was obtained as the result of a loan she received from the bank for the specific purpose of buying an automobile, the loan proceeds constituted a “special” deposit which precluded the bank from applying the funds in Mrs. Reese’s account to her debt with the bank. Moreover, Long-Lewis maintained that in view of the fact that it was a beneficiary of the agreement between the bank and Mrs. Reese establishing the “special” deposit, Long-Lewis was entitled to a judgment in its favor because the bank violated its agreement with Mrs. Reese by applying the loan proceeds to her debt with the bank rather than the debt which she owed to Long-Lewis.

. This case in distinguishable from Bank of Guntersville v. Crayter, 199 Ala. 599, 75 So. 7 (1917), in which our supreme court stated that a bank’s common law lien on funds held by it in the course of business had no application to “special” deposits “except as to the particular matter or dealing.” Crayter of course was decided prior to the adoption of the Uniform Commercial Code by this jurisdiction. In addition, it was based on the rule of “special” deposits with regard to common law liens.
Accordingly, Crayter is not controlling in the present situation because in this instance a valid security agreement existed under the Uniform Commercial Code and that agreement expressly provided that the bank had a lien on the loan proceeds placed in the account of Bonnie Reese. Thus, even if the security agreement could have been construed to have created a “special” deposit, that same agreement and the lien which existed thereunder was entitled to enforcement by the bank. See King v. Porter, 230 Ala. 112, 160 So. 101 (1935).