101 N.J. Super. 301 (1968)
244 A.2d 311
METRIC INVESTMENT, INC., PLAINTIFF-APPELLANT,
v.
CHARLES PATTERSON AND ROSE PATTERSON, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 27, 1968.
Decided June 11, 1968.
*302 Before Judges GOLDMANN, KILKENNY and CARTON.
Mr. Isadore B. Miller argued the cause for appellant (Messrs. Miller and Platt, attorneys).
Mr. Glenn E. Davis argued the cause for respondents (Mr. Joseph C. Doren, attorney).
The opinion of the court was delivered by KILKENNY, J.A.D.
By amended complaint, plaintiff sought a judgment against defendants based on a charge of fraud. Defendants defaulted in pleading. After default was entered, plaintiff submitted its proof. The trial court found its proof insufficient to warrant entry of a judgment for fraud because there was no showing that the allegedly false representations by defendants were made to plaintiff, or with the intent that it should rely on them. Concededly, the false representations were contained in a credit statement which defendants gave to a third party, a contractor who made home improvements for them. Accordingly, the requested judgment in fraud against defendants was denied and judgment was entered in favor of defendants.
Plaintiff appeals from the adverse judgment. It maintains that the trial court erred in determining that the false representation made by defendants to someone else other than plaintiff is not actionable in fraud in a suit by it.
Defendants contracted with Jalsco Construction Company for certain work on their home. They executed a credit statement on August 15, 1966. In listing therein their "fixed obligations, installment accounts, mortgages, LOANS and debts to banks, finance companies and Government agencies," defendants noted only "R.E. Scott, Westfield Ave., Eliz., N.J." as a debtor, and stated the debt was incurred in *303 1964, its present balance was $15,000 and the monthly payments were $118.
On September 1, 1966, defendants executed and delivered their negotiable promissory note payable to the order of "Jalsco Const. Co. Inc." in the amount of $1822.20. Presumably, the consideration for this note was the work done by Jalsco on defendants' home. This note was payable in 60 consecutive monthly installments of $30.37 each, the first payable on November 1, 1966 with interest. There were the usual provisions accelerating payment of the full balance on default, a 15% attorney's fee for collection of the debt, and the like.
Jalsco sold the note to plaintiff, transferring it by its endorsement "without recourse," except that it warranted that it furnished and installed the articles and materials and had fully completed all work which constituted the consideration for which the note was executed and delivered by the maker. Plaintiff endorsed it "with recourse" to First State Bank of Union. Subsequently, on March 28, 1967, this bank assigned the note back to plaintiff.
On April 5, 1967, plaintiff as holder sued defendants as makers of the note, alleging in its complaint that only $60.74 had been paid on account, leaving a balance of $1761.46. Recovery thereof was sought, plus $264.22 attorney's fees of 15%, together with late charges and costs of suit.
Thereafter, defendants filed a petition in bankruptcy, in which they scheduled many debts not listed in and antedating the credit statement given by them on August 15, 1966. On October 2, 1967, defendants received their discharge in bankruptcy.
To avoid the normal effect of a discharge in bankruptcy plaintiff filed an amended complaint on July 31, 1967, whereby it added a second count. Therein, it alleged as a separate cause that defendants made false representations in their credit statement "with intent to defraud the plaintiff," knowing that the representations were false when made because *304 of their indebtedness to other listed creditors. Plaintiff further asserted that it was induced to purchase defendants' note in reliance upon these false representations. It demanded judgment for the amount due on the note "and punitive damages." Obviously, plaintiff's purpose in adding the second count was to obtain a judgment against defendants based on fraud, a debt not dischargeable in bankruptcy.
As first noted above, defendants defaulted in pleading, a default was entered, but judgment in plaintiff's favor was denied. This appeal followed.
Plaintiff's proofs consisted of the credit statement, the note, defendants' bankruptcy schedule of debts  received in evidence as exhibits  and the testimony of Nicholas A. Blasi, president of plaintiff, and Edward G. Smith, an assistant vice-president of First State Bank of Union in charge of installment loans.
Smith testified that, in addition to the note transaction involved herein, his bank had made a home modernization loan of $3105 to defendants in June of 1966, prior to defendants' credit statement herein of August 15, 1966. Defendants made no payments, or only one or two payments on that loan before the bank received notice of defendants' bankruptcy.
Blasi testified that in the summer of 1966 plaintiff processed a home improvement loan for defendants, "for some storm windows, awnings and so on," approved the loan and paid the contractor (Jalsco) for the work. Blasi stated that the contractor submitted defendants' signed credit application, and that credit was extended and the loan made on the basis of that application. He admitted that defendants dealt initially with the contractor and the latter dealt with it with relation to financing the contract. Also, the note was concededly executed subsequent to the credit application. Blasi confirmed that plaintiff received the note by endorsement from Jalsco; it endorsed the note to First State Bank of Union under an agreement it had with the bank on these *305 loans; and, upon default in the payments, the bank reassigned the note to it.
Blasi further testified as to the balance due on the note and the receipt of notice of defendants' bankruptcy. He identified the bankruptcy schedule of defendants' debts, which was received in evidence.
Subsequently, according to Blasi, investigation revealed that defendants had three outstanding loans at the time of their credit application of August 15, 1966, which were not disclosed therein. Commerce Investment of Trenton was owed a balance of $380; First State Bank of Union, approximately $3100, and Jay and Strict Company of North Brunswick, $454.08. Blasi stated that plaintiff would not have extended credit on the Jalsco contract if it had known of those other debts. Defendants made no complaints about Jalsco's work and gave "financial difficulties" as their reason for not paying. They "just had too many obligations to pay."
On questioning by the trial court, Blasi stated that plaintiff received the credit statement from Jalsco; never saw or dealt with defendants personally; first reviewed the credit statement, and then agreed to accept the note, which was already signed and attached to the statement.
On redirect Blasi testified as to plaintiff's procedure. The contractor makes a telephone call to its office giving the credit information. It processes the application by checking the credit statement attached to the note with the telephone information "to see if they jive." And "if the credit statement contained more creditors than had been phoned in," plaintiff "would not negotiate this note to the contractor."
Based upon these proofs, the trial court found that the statements were false, but they were not made to this plaintiff. In the absence of proof that the representations were made to plaintiff, or made with the intent that it or someone similarly situated should rely on them, the trial court found a necessary element of proof was missing for entry of judgment on the ground of fraud. Reliance was placed upon Lembeck v. Gerken, 88 N.J.L. 329 (E. & A. 1915).
*306 In that case, defendant sold a piece of land to a person other than plaintiff, making certain false representations to the purchaser who, in reliance thereon, purchased the land, which in turn was sold to plaintiff. It was held that plaintiff could not maintain an action for deceit against defendant on the ground that the representations made to the third party, and upon which he relied, were false, where the proof failed to show that the third party was acting as the agent of the plaintiff in the purchase, or that defendant knew that he was in fact acting as the agent for someone else in the purchase.
Lembeck v. Gerken cites with approval (88 N.J.L., at p. 331) the following legal doctrine expressed by Judge Cooley in his work on Torts (3d ed. p. 940):
"No one has a right to accept and rely upon the representation of others but those to influence whose actions they were made. If every one might take up and act upon any assertion he heard made or saw in print as one made for him to act upon, and the truth of which was warranted by the asserter, the ordinary conversation of business and of society would become unsafe and the customary publication of current news or supposed news would only be made under the most serious pecuniary responsibility."
On the other hand, where false representations are made to one person with the intent that they be communicated to others for the purpose of inducing the others to rely upon them, they may form the basis of an action for fraud by those others. 37 Am. Jur.2d, Fraud and Deceit, §§ 189, 190, 191 (1968); Annotation 91 A.L.R. 1363, 1372 (1934). In Judson v. Peoples Bank & Trust Co., 25 N.J. 17 (1957), it was held that where a defendant made false representations to one member of a family and urged him to transmit the representations to other members of the family for the purpose of inducing them to sell their shares in the family corporation at a decreased value, defendant's conduct would support a charge of fraud even by those to whom defendant's false representations had not directly been made by him.
*307 Can it be said that one who makes a fraudulent misrepresentation in a credit statement to the payee of a negotiable instrument, in order to induce him to rely thereon in accepting the instrument, reasonably intends that others to whom the paper may thereafter be transferred will also be expected to rely upon the representations in the statement, if it accompanies the instrument? Lembeck v. Gerken does not answer this question precisely because a transfer of land was involved in that case.
If a fraudulent misrepresentation is "embodied" in a "negotiable instrument," the person so misrepresenting "is subject to liability to another who in the course of a business transaction deals with him or with a third person in reliance upon the truth of the representation." 3 Restatement, Torts § 532 (1938). Comment (a) thereto points out that such a misrepresentation is made to all persons who may in the ordinary course of business have occasion to deal in a business transaction with such instruments referred to in this section.
Plaintiff urges upon us the applicability of § 532. We find it is not pertinent because the credit statement of August 15, 1966 was separate and apart from the negotiable note of September 1, 1966. The fraudulent misrepresentation was not "embodied" in the note. There was no proof that defendants attached the credit statement to the note. Admittedly, they did not deliver both papers to plaintiff. Rather, it was the contractor, Jalsco, who did so.
Plaintiff also places reliance upon § 533 of the aforesaid Restatement. It provides that "the maker of a fraudulent misrepresentation in a business transaction is subject to liability to another who acts in justifiable reliance upon it, if the misrepresentation, although not made directly to the other, is made to a third person for the purpose of having him repeat its terms or communicate its substance to the other in order to influence his conduct in a particular transaction or type of transaction."
*308 Is § 533 applicable herein? Although defendants' misrepresentations were not made directly to plaintiff, but to a third party, Jalsco Construction Company, can it reasonably be concluded that the credit statement, relied upon by Jalsco in accepting installment payments as provided in the negotiable note, was also for the purpose of having Jalsco repeat its terms or communicate its substance to another in order to induce conduct by the other in this "type of transaction"? We proceed to a consideration of that question.
Home modernization loans are commonplace in our modern society. Home owners, by direct approach of contractors and widespread advertising, are importuned daily to have that extra room added to the house; to avoid further painting by the use of aluminum siding; to close in the open porch with jalousies; to install storm windows and doors and fiberglass awnings; to create new recreation rooms in the basement, and make countless other improvements. They are assured that they can improve now and pay later, over a period of years with low monthly installments.
The business transaction, except for those who can pay cash, follows a customary type. The homeowner enters into a contract for the improvements to be made. He frequently furnishes a credit statement and signs a negotiable note. The contractor, usually unable to finance many transactions, resorts to a bank or other lending institution and obtains funds for further jobs by selling his paper at a discount. As a rule, the finance companies will purchase the notes with readily available cash at a large discount, but without recourse to the contractor, except for his warranty that he has completed the job. The finance companies, in turn, borrow from the banks at a rate of interest below the discount price, but subject to recourse by the banks against them if the makers of the notes fail to live up to their obligations. Such was the situation here.
Defendants' bankruptcy schedule of debts deflects that, prior to this transaction, they had incurred debts, still unpaid, for a color television, an encyclopedia, rugs, aluminum *309 siding on the house, and a vacuum cleaner. The merchandise was purchased under conditional sale contracts. The obligations were generally financed through some credit or investment corporation. It could conceivably be found that they knew that persons with whom they dealt on credit may probably or will finance the indebtedness through others; and, therefore, papers signed by them in connection with a credit transaction might be relied upon by others.
However, Comment (b) under § 533 states:
"It is not enough to make the rule stated in this Section applicable that the maker of the misrepresentation knows that its recipient may probably, or will to a substantial certainty, repeat it to a third person for the purpose of influencing his conduct in transactions with him. The misrepresentation must be made for the purpose of having it repeated in terms or communicated in substance to the third person." (Italics ours)
There is no proof in the record before us that defendants made the misrepresentations "for the purpose of having it repeated" to plaintiff or some other third person. "It is not enough," as Comment (b) points out, that defendants knew, on the basis of their prior credit transactions, that Jalsco might probably or would to a substantial certainty repeat the credit information to some third person.
The trial court, therefore, properly found a vital omission in plaintiff's proofs of any showing that the representations were made with the intent that plaintiff or someone similarly situated should rely on them. Certainly, there was no proof that defendants gave the credit statement to Jalsco "for the purpose of having it repeated." Defendants did not testify as to their "purpose," and no representative of Jalsco did either. For aught we know, the credit statement was given to Jalsco two weeks before the note was executed merely as an assurance to Jalsco of payment, without any "purpose" that it be communicated to others.
Plaintiff urges upon us Bank of Montreal v. Thayer, 7 F. 622 (Iowa Cir. 1881). That case is inapposite on its facts. *310 There, the receiver of a railroad executed certificates payable to A, "or bearer" and falsely represented in the certificates that they constituted a first lien. It was held that an action in fraud would lie against the receiver by a "bearer" of a certificate. The representation was made to any "bearer" and thus was made to a class, of whom plaintiff was one. Moreover, the misrepresentation was "embodied" in the instrument. The same is not true in the instant case.
For the foregoing reasons, the judgment is affirmed.