735 A.2d 606 (1999)
324 N.J. Super. 344
Susan KAUFMAN, on behalf of herself and all others similarly situated, Plaintiff-Appellant,
v.
I-STAT CORPORATION, William P. Moffitt, Lionel N. Sterling, Imants R. Lauks, and Matthias Plum, Jr., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued March 8, 1999.
Decided August 10, 1999.
*607 William C. Fredericks (Milberg Weiss Bershad Hynes & Lerach) of the New York bar, admitted pro hac vice, New York City, for plaintiff-appellant (Miles M. Tepper, attorney, West Orange; Robert P. Sugarman, of the New York bar, admitted pro hac vice, New York City, and Mr. Fredericks, of counsel; Mr. Tepper, on the brief).
Lawrence M. Rolnick, Roseland, for defendants-respondents (Lowenstein Sandler, attorneys; Douglas C. Conroy and Kurt W. Hansson, (Paul, Hastings, Janofsky & Walker) of the Connecticut bar, admitted pro hac vice, Stamford, CT, of counsel; Edward T. Dartley, Roseland and Mr. Rolnick, on the brief).
Before Judges HAVEY, SKILLMAN and LESEMANN.
The opinion of the court was delivered by SKILLMAN, J.A.D.
The primary issue presented by this appeal is whether a person who purchases corporate securities for a price which is artificially inflated by deliberately false statements issued by the corporation may maintain an action for common law fraud even though the purchaser was not aware of those statements. The trial court held that to maintain a fraud action based upon a corporation's deliberate false statements about its financial condition, a plaintiff must allege that he or she was aware of and directly relied upon those statements. Because plaintiff does not allege such direct reliance, the court dismissed her complaint. We conclude, however, that a plaintiff may satisfy the reliance element of a cause of action for fraud by showing reliance upon the integrity of the market price for a corporate security which has been artificially inflated by the corporation's deliberate false statements. Therefore, we reverse the dismissal of plaintiff's complaint.
Defendant i-Stat Corporation (i-Stat) is involved in the manufacture and sale of blood analysis products. The corporation's stock is publicly traded on the NASDAQ. The individual defendants are officers and directors of i-Stat: William P. Moffitt is the President and Chief Executive Officer; Imants R. Lauks is the Executive Vice President and Chief Technology Officer; Lionel N. Sterling and Matthias Plum, Jr. are both directors.
On May 22, 1995, plaintiff Susan Kaufman purchased 100 shares of i-Stat common stock. She subsequently filed this action as a putative class representative of all persons who purchased i-Stat stock between May 9, 1995 and March 19, 1996. Plaintiff's complaint alleges that during this period i-Stat issued various materially misleading statements concerning the company's sales and acceptance of its products in the medical community. Plaintiff alleges that i-Stat issued public statements which "reported sales that were not, in fact, true sales, but were, instead, loans on a trial basis." Plaintiff also alleges that i-Stat reported sales to certain hospitals without disclosing that *608 the sales were induced by a major stockholder's charitable donations to the hospitals. Plaintiff claims that these sales practices portrayed an exaggerated picture of i-Stat's sales and the degree of market acceptance of its products. Plaintiff further alleges that during the period i-Stat was issuing public statements which materially misrepresented the magnitude of its sales and acceptance of its products in the medical community, the individual defendants sold more than 85,000 shares of stock from which they realized proceeds of almost three million dollars.
In early 1996, i-Stat's sales practices were publicly described in articles published in the New York Times and Wall Street Journal, one of which also reported that the Securities and Exchange Commission had commenced an investigation of the company. After publication of these articles, the market price of i-Stat's stock decreased substantially. Subsequently, plaintiff sold her i-Stat stock at a loss.
Plaintiff's complaint contains two counts: the first asserts a claim for negligent misrepresentation and the second a claim for common law fraud. After filing their answer, defendants moved for an order limiting initial discovery to the issue of plaintiff's reliance upon defendants' alleged false statements regarding i-Stat's financial condition and prospects. The parties subsequently entered into a stipulation on this issue, which states:
1. In purchasing and retaining her i-STAT securities, plaintiff did not actually or directly receive or rely on any communication containing any misrepresentation alleged in the complaint in this action, nor did she actually receive or rely on any communication which omitted material facts necessary to make any statements alleged in the complaint not false or misleading.
2. Plaintiff made her purchase of i-STAT securities through a brokerage firm. Plaintiff did not actually or directly receive or rely on any communication from the brokerage firm in connection with her purchase of i-STAT securities.
3. In purchasing and retaining her i-STAT securities, plaintiff relied exclusively on the integrity of the market price of i-STAT stock at the time of her purchase. Accordingly, in order to satisfy the reliance element of her common law claims for fraud and negligent misrepresentation in this action, plaintiff relies solely on the complaint's fraud-on-the-market allegations ..., which allege that a presumption of reliance applies because the alleged misrepresentations and/or omissions made by defendants caused i-STAT's common stock to trade at artificially inflated prices during the class action period.
Based on this stipulation, defendants moved for summary judgment. At oral argument on the motion, the trial court expressed the view that plaintiff's claim "makes all the sense in the word." However, the court concluded that it would be inappropriate for a trial court "to expand" common law principles relating to the reliance element of a cause of action for fraud or negligent misrepresentation. Therefore, the court granted defendants' motion and dismissed plaintiff's complaint.[1]
We conclude that indirect reliance in the form of reliance upon the integrity of the market price for a corporate security which has been artificially inflated by the corporation's deliberate false statements concerning its financial condition may satisfy the reliance element of a common law fraud action. However, we also conclude that considerations of public policy preclude recognition of such indirect reliance as a foundation for liability for negligent misrepresentation. Therefore, we reverse *609 the summary judgment dismissing the fraud count of plaintiff's complaint and affirm the dismissal of her claim for negligent misrepresentation.

I
A cause of action for common law fraud has five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610, 691 A.2d 350 (1997). Only the fourth elementplaintiff's reliance upon defendant's misrepresentationsis in dispute in this appeal.
Defendants argue that because plaintiff was not personally aware of i-Stat's alleged fraudulent statements concerning the magnitude of its revenues and acceptance of its product in the medical community, she cannot show actual reliance. Plaintiff counters that even though she did not directly rely upon defendants' statements in deciding to purchase and retain i-Stat stock, she did rely upon the presumed integrity of the stock's market price, which had been artificially inflated by defendants' alleged misrepresentations. Plaintiff claims that this constituted indirect reliance upon defendants' misrepresentations.
Our courts have previously recognized that the reliance element of a cause of action for fraud may be satisfied by indirect reliance. See Judson v. Peoples Bank & Trust Co., 25 N.J. 17, 27, 134 A.2d 761 (1957); Metric Inv., Inc. v. Patterson, 101 N.J.Super. 301, 306-07, 244 A.2d 311 (App.Div.1968). Thus, "where false representations are made to one person with the intent that they be communicated to others for the purpose of inducing the others to rely upon them, they may form the basis of an action for fraud by those others." Id. at 306, 244 A.2d 311.
The Restatement of Torts adopts the same rule:
The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved.
[Restatement (Second) of Torts § 533 (1977).]
Comment (f) to this section of the Restatement cites, as an example of such indirect reliance, a third party's reliance upon false information given to a credit company for the purpose of obtaining a favorable credit rating:
[A person who provides such information] is subject to liability to any person who may be expected to and does extend credit to him in reliance upon the erroneous rating so procured. The fact that the rating company does not communicate the figures misstated by the maker of the misrepresentations is immaterial. It is enough that their substance is summarized with reasonable accuracy or that the rating given expresses the effect of the misstatements made.... [I]f the company is one whose ratings purport to show the general financial position of those who make reports to it, the maker of the misrepresentation is subject to liability to anyone who in reliance upon the rating deals with him in any one of the ways in which the maker's financial position is material.

[Id. § 533 comment f.]
Based on a similar analysis, the federal courts have concluded that the reliance element of a fraud claim under federal securities law may be satisfied by evidence that false statements issued by a public corporation have artificially inflated the price of its securities. See, e.g., Basic Inc. *610 v. Levinson, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988); Peil v. Speiser, 806 F.2d 1154, 1160-63 (3rd Cir.1986); Blackie v. Barrack, 524 F.2d 891 (9th Cir.1975). The rationale for the conclusion that the reliance required to establish a securities fraud claim may consist of the purchase of corporate securities for a price which has been artificially inflated by the corporation's fraudulent statementscommonly referred to as "fraud on the market"is explained in Blackie v. Barrack, supra:
Proof of reliance is adduced to demonstrate the causal connection between the defendant's wrongdoing and the plaintiff's loss. We think causation is adequately established in the impersonal stock exchange context by proof of purchase and of the materiality of misrepresentations, without direct proof of reliance.
....
A purchaser on the stock exchanges may be either unaware of a specific false representation, or may not directly rely on it; he may purchase because of a favorable price trend, price earnings ratio, or some other factor. Nevertheless, he relies generally on the supposition that the market price is validly set and that no unsuspected manipulation has artificially inflated the price, and thus indirectly on the truth of the representations underlying the stock pricewhether he is aware of it or not, the price he pays reflects material misrepresentations. Requiring direct proof from each purchaser that he relied on a particular representation when purchasing would defeat recovery by those whose reliance was indirect, despite the fact that the causational chain is broken only if the purchaser would have purchased the stock even had he known of the misrepresentation. We decline to leave such open market purchasers unprotected.

[Id. at 906-07.]
In Basic Inc. v. Levinson, supra, the Supreme Court of the United States held that indirect reliance in the form of reliance upon the market price of a security may satisfy the reliance element of a securities fraud claim under section 10(b) of the Securities Exchange Act of 1934 (Securities Exchange Act), 15 U.S.C. § 78j(b) and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5 (1999):
We agree that reliance is an element of a Rule 10b-5 cause of action. Reliance provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury. There is, however, more than one way to demonstrate the causal connection. ...
The modern securities markets, literally involving millions of shares changing hands daily, differ from the face-to-face transactions contemplated by early fraud cases, and our understanding of Rule 10b-5's reliance requirement must encompass these differences.
"In face-to-face transactions, the inquiry into an investor's reliance upon information is into the subjective pricing of that information by that investor. With the presence of a market, the market is interposed between seller and buyer and, ideally, transmits information to the investor in the processed form of a market price. Thus the market is performing a substantial part of the valuation process performed by the investor in a face-to-face transaction. The market is acting as the unpaid agent of the investor, informing him that given all the information available to it, the value of the stock is worth the market price."
[485 U.S. at 243-44, 108 S.Ct. at 989-90, 99 L.Ed.2d at 215-16 (quoting In re LTV Securities Litigation, 88 F.R.D. 134, 143 (N.D.Tex.1980)).]
Basic's conclusion that the reliance element of a securities fraud case may consist of the purchase of a security at a price which has been artificially inflated by a corporation's false statements concerning its financial condition does not rest on the specific language of the Securities Exchange *611 Act or Rule 10b-5. In fact, the reliance element of a securities fraud claim under these regulatory provisions is substantially the same as in a common law fraud action. See Basic, supra, 485 U.S. at 243, 108 S.Ct. at 989, 99 L.Ed.2d at 215; Peil v. Speiser, supra, 806 F.2d at 1160.[2] Therefore, the reasoning of Basic and other cases brought under federal securities law is equally applicable to a common law action for securities fraud.
Because most securities fraud litigation has been brought in federal court under federal securities laws, only three recent state appellate court decisions have considered whether the reliance element of a common law fraud claim may be satisfied by reliance upon the integrity of the market price of a publicly traded security. One court simply stated in a one page opinion, without any analysis, that a "fraud-on-the market claim [is] unavailable in common law." Kahler v. E.F. Hutton & Co., Inc., 558 So.2d 144, 145 (Fla.Dist.Ct. App.1990). Another court simply assumed the inapplicability of the fraud-on-the market theory, citing three federal district court decisions, without undertaking any independent analysis. Gaffin v. Teledyne, Inc., 611 A.2d 467, 474-75 (Del.1992). Consequently, the only recent state appellate court decision which contains a meaningful discussion of the issue is Mirkin v. Wasserman, 5 Cal. 4th 1082, 23 Cal.Rptr.2d 101, 858 P.2d 568 (1993). In that case, a majority of the court held that a plaintiff who asserts a common law fraud claim may not rely upon the theory of fraud-on-the-market. However, two justices vigorously dissented, pointedly noting that "a defendant's misrepresentation may be an `immediate cause' of a plaintiff's injury-producing conduct even though the defendant did not make the misrepresentation directly to the plaintiff, and even though the plaintiff never heard or read the precise words of the misrepresentation." Id. 23 Cal.Rptr.2d 101, 858 P.2d at 586. We are satisfied that the Mirkin dissent properly interprets the principles of indirect reliance reflected in Basic and section 533 of the Restatement of Torts, and assures that defrauded investors are afforded an adequate remedy under state law.[3]
Finally, we reject defendants' suggestion that this court should decline to apply the fraud-on-the-market theory of indirect reliance in a securities fraud case because plaintiffs already have an adequate remedy under federal securities law. The Securities Exchange Act of 1934 states that "the rights and remedies provided by this chapter shall be in addition to any and all remedies that may exist at law or in equity." 15 U.S.C.A. § 78bb(a). Thus, Congress contemplated that federal remedies for securities fraud would supplement rather than preempt whatever remedies a state may elect to afford. Consequently, in the absence of any expression of congressional intent to preempt state law or limit state remedies,[4] we perceive no reason *612 why, as a matter of state policy, we should deny an effective state remedy to a defrauded investor simply because she also has a remedy under federal law. Moreover, the principles relating to indirect reliance on fraudulent statements upon which this opinion rests may well apply to cases that are not covered by federal securities laws. See, e.g., In re Integrity Ins. Co., 240 N.J.Super. 480, 502-03, 573 A.2d 928 (App.Div.1990) (class action by policyholders and creditors against officers, directors and primary stockholders of bankrupt insurance company asserting various claims including common law fraud).
In sum, we hold that indirect reliance in the form of reliance upon the integrity of the market price for a corporate security which has been artificially inflated by the corporation's deliberate false statements concerning its financial condition may satisfy the reliance element of a common law fraud action. We express no opinion concerning the evidence required to satisfy the other elements of a common law action for securities fraud or the applicability of any defenses. We also express no opinion concerning class certification or the appropriate scope of the plaintiff class if there is certification.

II
We turn next to plaintiff's negligent misrepresentation claim. "[N]egligent representation" consists of "[a] false statement negligently made, and on which justifiable reliance is placed." H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 334, 461 A.2d 138 (1983) (quoting Pabon v. Hackensack Auto Sales, Inc., 63 N.J.Super. 476, 497, 164 A.2d 773 (App.Div.1960)). A determination of the scope of liability for negligent representation "involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." Id. at 341, 461 A.2d 138 (quoting Goldberg v. Housing Auth. of Newark, 38 N.J. 578, 583, 186 A.2d 291 (1962)).
Applying these principles, our Supreme Court held that an independent auditor generally "has a duty to all those whom that auditor should reasonably foresee as recipients from the company of the statements for its proper business purposes, provided that the recipients rely on the statements pursuant to those business purposes." Id. at 352, 461 A.2d 138. However, the Court stopped short of imposing liability for claims by parties who do not receive audited statements from the company, such as purchasers of the company's stock. Id. at 352-53, 461 A.2d 138.
We recognize that Rosenblum does not expressly hold that a plaintiff must receive and directly rely upon a false statement to maintain an action for negligent misrepresentation; it only states that cases involving indirect reliance upon negligent financial statements "are not before us and we express no opinion with respect to such situations." Id. at 353, 461 A.2d 138. However, the Court stated in a later case that it had "limited" accountants' liability in Rosenblum because it was "[m]indful of the danger of potentially unlimited liability." Petrillo v. Bachenberg, 139 N.J. 472, 484, 655 A.2d 1354 (1995); see also Karu v. Feldman, 119 N.J. 135, 146-47, 574 A.2d 420 (1990). Therefore, we are reluctant to expand the scope of liability for negligent misrepresentation beyond the parameters established in Rosenblum.
Furthermore, there are substantial policy reasons for establishing a more limited rule of liability for negligent than for fraudulent misrepresentations. As explained *613 in a comment to the section of the Restatement of Torts describing the tort of negligent misrepresentation:
When there is no intent to deceive but only good faith coupled with negligence, the fault of the maker of the misrepresentation is sufficiently less to justify a narrower responsibility for its consequences.
Honesty requires only that the maker of a representation speak in good faith and without consciousness of a lack of any basis for belief in the truth or accuracy of what he says. The standard of honesty is unequivocal and ascertainable without regard to the character of the transaction in which the information will ultimately be relied upon or the situation of the party relying upon it. ...
Unlike the duty of honesty, the duty of care to be observed in supplying information for use in commercial transactions implies an undertaking to observe a relative standard, which may be defined only in terms of the use to which the information will be put, weighed against the magnitude and probability of loss that might attend that use if the information proves to be incorrect.
[Restatement (Second) of Torts § 552 comment a (1977).]
The conclusion that plaintiff cannot maintain a claim for negligent misrepresentation based on the theory of fraud-on-the-market also establishes a rule of liability for securities fraud under state law which is essentially congruent with federal securities law. Ernst & Ernst v. Hochfelder, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). An investor who pursues a claim under Rule 10b-5 must show "scienter," id. at 212, 96 S.Ct. at 1390, 47 L.Ed.2d at 688, which is "a mental state embracing intent to deceive, manipulate or defraud." Id. at 193 n. 12, 96 S.Ct. at 1381, 47 L.Ed.2d at 677.[5] Therefore, liability cannot be imposed for mere negligence under federal securities law. Similarly, we decline to adopt a rule of liability which would create expansive potential liability for negligent misrepresentations that may affect the price of securities.
Our conclusion that the theory of fraud-on-the-market should not be applied to plaintiff's claim for negligent misrepresentation is also supported by the dissenting opinion in Mirkin:
[L]iability under the fraud-on-the-market principle should not extend to negligent misrepresentation. This court has recognized that liability should be broader for actual fraud than for negligent misrepresentation. We have emphasized that when a defendant's misconduct is not intentional, but merely negligent, foreseeability of harm may not provide a sufficient limit on the scope of liability and that the liability imposed should not be grossly disproportionate to the moral fault of the negligent party.
....
In actions involving negligence or negligent misrepresentation, courts must balance competing concerns. Liability should be sufficient to provide an incentive for due care and to compensate those most directly injured by an absence of care, but should not be so great that it is grossly disproportionate to fault or discourages participation in socially valuable endeavors. In the context of securities transactions, liability should be sufficient to promote care in the release of information material to the value of publicly traded securities, and to provide compensation to at least the most immediate victims of inaccurate information. But the liability should not be so broad as to discourage businesses from using public markets to accumulate capital.
Here, the balance would be most appropriately struck by limiting recovery *614 for negligent misstatements to those who have received and relied upon the misstatements directly, and excluding those who have relied indirectly through the market-set price.
[23 Cal.Rptr.2d 101, 858 P.2d at 595.][6]
We agree with the reasoning of the Mirkin dissent and consequently affirm the dismissal of plaintiffs' claim for negligent misrepresentation.
Accordingly, we reverse the dismissal of plaintiff's fraud claim and affirm the dismissal of her claim for negligent misrepresentation.
NOTES
[1] Because the trial court dismissed plaintiff's complaint on the threshold question of whether she satisfied the reliance element of her claims, it never addressed the question whether the complaint should be certified as a class action and, if so, the proper scope of the plaintiff class.
[2] We note that a rudimentary version of the fraud-on-the-market theory was endorsed by the New York Court of Appeals many years before enactment of the Securities Exchange Act. Ottinger v. Bennett, 203 N.Y. 554, 96 N.E. 1123 (1911), rev'g on dissent 144 A.D. 525, 129 N.Y.S. 819, 824-26 (1911); see A.A. Berle, Jr., Liability for Stock Market Manipulation, 31 Colum. L.Rev. 264, 269-70 (1931); A.A. Berle, Jr., Stock Market Manipulation, 38 Colum. L.Rev. 393, 393-95 (1938).
[3] We also note that two federal district courts have upheld common law securities fraud claims under the theory of fraud-on-the-market based upon their views of how the highest courts of New York and Massachusetts would decide the issue. Hurley v. Federal Deposit Ins. Corp., 719 F.Supp. 27, 34 n. 4 (D.Mass. 1989); Minpeco, S.A. v. Hunt, 718 F.Supp. 168, 175-76 (S.D.N.Y.1989).
[4] Subsequent to the filing of this action, Congress enacted the Securities Litigation Uniform Standards Act of 1998. Pub.L. No. 105-353, 112 Stat. 3227 (1998). This legislation provides that, with certain limited exceptions, no class action may be maintained in state court based on state statutory or common law which alleges "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security," or "any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." Pub.L. No. 105-353, § 101(b)(1)(B), 112 Stat. 3227, 3230 (1998) (codified at 15 U.S.C.A. § 78bb(f)(1)(A) and (B)). Because this legislation only applies to actions filed after its effective date, Pub.L. No. 105-353, § 101(c), 112 Stat. 3227, 3233 (1998), it does not affect this case. However, if as defendants contend, this legislation broadly preempts securities fraud litigation in state court, this opinion may have limited precedential impact, at least in securities fraud litigation.
[5] The Supreme Court has not yet determined whether "recklessness" satisfies the "scienter" requirement. Herman & MacLean v. Huddleston, 459 U.S. 375, 378 n. 4, 103 S.Ct. 683, 685, 74 L.Ed.2d 548, 553 (1983).
[6] We note that a federal district court also has upheld a common law fraud claim based on the theory of fraud on market but concluded that an allegation of direct reliance is required to maintain an action for negligent misrepresentation. Hurley v. Federal Deposit Ins. Corp., supra, 719 F.Supp. at 32-33.