

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-21-2006

# Mortellite v. Norvatis Crop

Precedential or Non-Precedential: Precedential

Docket No. 03-3847

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Mortellite v. Norvatis Crop" (2006). *2006 Decisions*. Paper 506.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/506

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 03-3847

————

GARY MORTELLITE; and GEORGE MORTELLITE,
individually and d/b/a/ BUFFALO FARMS; MICHAEL DiMEO
and WILLIAM DiMEO, individually and d/b/a INDIAN
BRAND FARMS, INC.; ANTHONY DiMEO, JR. and
WILLIAM DiMEO, individually and d/b/a COLUMBIA FRUIT
FARMS, INC.; WILLIAM A. MORTELLITE, individually and
d/b/a WM. MORTELLITE FARMS; JOYCE CAPPUCCIO,
individually and d/b/a WM. CAPPUCCIO & SONS; JOSEPH D.
BERENATO, individually and d/b/a CHAPPINE FARMS;
GENE J. MARTINELLI, individually and d/b/a COLUMBIA
CRANBERRY CO.; JOSEPH E. MARTINELLI, individually
and d/b/a BLU-JAY FARMS; LOUIS R. CONDO, individually
and d/b/a BIG BUCK FARMS; DAVID RIZZOTTE,
individually and d/b/a GLOSSY FRUIT FARMS, INC.;
GREGORY A. CLARK, individually and d/b/a CLARK
FARMS; JEFFREY WHALEN, individually and d/b/a
WHALEN FARMS; HELEN BARTMER, individually and
d/b/a S.J. BLUEBERRIES; ANTHONY MELORA, individually
and d/b/a MELORA FARMS; BILL AUGUSTINE, individually
and d/b/a BILL AUGUSTINE FARMS; RUSSELL
FRANCESCHINI and SCOTT FRANCESCHINI, individually
and d/b/a R & S FRANCESCHINI FARMS; EVELYN
FRANCHETTI, individually and d/b/a FRANCHETTI FARMS,
ANTHONY VACCARELLA, individually and d/b/a
VACCARELLA FARMS; FRANK JACOBS, individually and
d/b/a JACOBS FARM; JOHN A. DEMARCO, SR., individually
and d/b/a SUN VALLEY FARMS INC.; JOSEPH A.
SILIGATO, individually and d/b/a BLUEMOON BERRY
FARMS; CARMEN MERLINO, JR., individually and d/b/a
OAKCREST FARMS; JOHN DOE(S), as discovered,

1

v.

NOVARTIS CROP PROTECTION, INC.,
a foreign corporation


JOSEPH D. BERENATO; LOUIS R. CONDO; DAVID
RIZZOTTE; JEFFREY WHALEN; BILL AUGUSTINE;
ANTHONY VACCARELLA; CARMEN MERLINO, JR.;
MICHAEL DɪMEO; WILLIAM DɪMEO; ANTHONY DɪMEO,
JR.; WILLIAM DɪMEO; JOYCE CAPPUCCIO; GENE J.
MARTINELLI; JOSEPH E. MARTINELLI; GREGORY A.
CLARK; ANTHONY MELORA; RUSSELL FRANCESCHINI
and SCOTT FRANCESCHINI,

Appellants.

————

On Appeal from the United States District Court for the District
of New Jersey
(D.C. No. 99-cv-02118)
District Judge: Honorable Joseph H. Rodriguez

————

Argued January 13, 2006
Before: FUENTES, ROSENN,[*] and ROTH,[**]  Circuit Judges.

(Filed: August 21, 2006)

————

[*] This case was argued before the panel of Judges
Fuentes, Rosenn, and Roth.  Judge Rosenn died on February 7,
2006, before the filing of the opinion.  The decision is filed by a
quorum of the panel.  28 U.S.C. § 46(d).

[**]Effective May 31, 2006, Judge Roth assumed senior
status.

David C. Frederick (Argued)
Kellogg, Huber, Hansen, Todd, Evans & Figel
1615 M Street, N.W.
Suite 400
Washington, DC 20036

R.C. Westmoreland
Kathleen F. Beers
Westmoreland, Vesper, Schwartz & Quattrone
Bayport 1, Suite 500
8025 Black Horse Pike
West Atlantic City, NJ 08232

ATTORNEYS FOR APPELLANTS

John P. Mandler (Argued)
Bruce Jones
Kristin R. Eads
Faegre & Benson, LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402

Robert Machi
Morgan, Melhuish, Monaghan, Arvidson, Arbutyn & Lisowski
Suite 200
651 W. Mt. Pleasant Avenue
Livingston, NJ 07039

ATTORNEYS FOR APPELLEE

---

OPINION OF THE COURT

---

FUENTES, <u>Circuit Judge</u>

Plaintiffs are New Jersey blueberry farmers who filed suit against a pesticide company for damages to their crops based on

3

theories of products liability, negligence, consumer fraud, and breach of express warranty.  In two separate orders, the District Court granted summary judgment in favor of defendant Novartis 1) based on releases that some of the plaintiffs had signed before filing suit, and 2) based on its holding that the remaining plaintiffs' claims were preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA").

The principal issue on appeal is whether Plaintiffs' claims are preempted by FIFRA.  We conclude that, under Bates v. Dow Agrosciences LLP, 544 U.S. 431 (2005), decided after the District Court's rulings in this case, Plaintiffs' claims for defective design, defective manufacture, negligent testing, negligent misrepresentation, and fraud are not preempted because those claims do not impose labeling requirements in addition to or different from those required by FIFRA.  Accordingly, we vacate the District Court's judgment as to those claims and remand for further proceedings.  We also remand for the District Court to consider whether, under Bates, FIFRA preempts Plaintiffs' failure-to-warn claim.

Plaintiffs also appeal the District Court's granting of summary judgment against the claims of seven farmers who signed releases with Novartis.  For the reasons that follow, we affirm the District Court's dismissal of those claims.

## I.  Factual and Procedural Background

For several years, Plaintiffs (the "farmers") treated the blueberry plants on their farms with two insecticides manufactured by defendant Novartis Crop Protection, Inc. ("Novartis"): Diazinon 50 WP ("50 WP") and Diazinon AG 500 ("AG 500").  Before applying the insecticide to the plants, the farmers engaged in the practice of "tank mixing," whereby they would mix these insecticides with the fungicides Captan or Captec (the "fungicides").  The farmers allege that tank mixing is a common and well-known practice among virtually all farmers that dates back to the introduction of pesticides.   For several years, the farmers safely mixed the fungicides with Diazinon 50 WP or Diazinon AG 500 and experienced no crop damage.

4

This changed, however, when Novartis produced and marketed to the farmers a new insecticide known as Diazinon AG 600 ("AG 600"). The company distributed advertising literature claiming that its new product was safer and more effective than AG 500 or 50 WP. The farmers began buying and using AG 600 in the Spring of 1997, mixing the new product with the fungicides as they had done with previous Novartis insecticides. Unbeknownst to the farmers, however, AG 600 contained an additional ingredient known as a "surfactant," which was not found in 50 WP or AG 500.[1] The farmers allege that the surfactant, when mixed with the fungicides, caused systematic injury to their blueberry plants, such as blotches, depressions, and spots on the plants, as well as plant death. The farmers also allege that Novartis failed to reveal the addition of the surfactant to Novartis field personnel and failed to include this information in any of its marketing materials.

In response to the damages to their 1997 blueberry crop, the farmers hired Dr. William Sciarappa ("Sciarappa"), a plant pathologist, to investigate the farmers' crop damage. Novartis sent its representative, Dr. Neil Lapp ("Lapp"), also a plant pathologist. Almost all contact between the farmers and Novartis between August 1997 and December 1997 was conducted by Lapp on behalf of Novartis and Sciarappa on behalf of the farmers. Sciarappa's investigations concluded that AG 600 can cause plant damage when mixed with the fungicides.

Novartis decided to explore "goodwill" settlement agreements with the farmers to compensate them for the damage to their crops. Betweem November 1997 and January 1998, Novartis entered into settlement agreements with thirteen of the fifteen farmers (the "settling farmers").[2] As part of each settlement, the settling farmer signed a release indicating that he or she received the settlement proceeds

---

[1]The surfactant is intended to enhance the ability of the active ingredient in AG 600 to spread evenly across plant tissue and adhere to plant structure.

[2]The other farmers were not paid any damages.

in full satisfaction and extinguishment of all claims and causes of action against [Novartis] . . . arising out of any damage or loss, present or future, to crops, plants, animals, fish or land, direct or indirect, known or unknown, allegedly sustained by the [settling plaintiff] as a result of the use of [AG 600].

The releases also provided that "[i]t is agreed that this is a business decision in compromise of a disputed claim and that the making of this payment is not an admission of liability on the part of [Novartis]."

The following year, the farmers noticed continuing damage to their blueberry crop, including continued inhibition of plant growth, from their use of AG 600 in 1997. When the farmers contacted Novartis, Novartis informed them that it would not compensate the farmers for any damages to their 1998 crop because the releases signed by the settling farmers precluded any future claims.

The farmers commenced this action seeking damages based on claims of strict products liability, negligence, negligent misrepresentation, fraud, breach of express warranty, and breach of the New Jersey Consumer Fraud Act. The thirteen farmers who signed settlement agreements bring additional claims of fraud in the inducement and breach of the covenant of good faith and fair dealing.

Novartis moved for summary judgment against the settling farmers based on the releases that they had signed. The District Court granted summary judgment dismissing the claims of seven of the thirteen settling farmers based on the releases. The District Court found that, with regard to the remaining six settling farmers, genuine issues of material fact existed as to whether Novartis fraudulently induced them to sign the settlement agreements or breached the covenant of good faith and fair dealing in negotiating the settlement agreements. Novartis brought a subsequent motion for summary judgment on the grounds that the remaining farmers' claims were preempted by FIFRA. The District Court granted the motion, finding that FIFRA preempted all of the farmers' claims except the claims for fraud in the inducement and breach of the

6

covenant of good faith and fair dealing, which the District Court dismissed as dependent on the preempted claims. See Mortellite v. Novartis Crop Prot., Inc., 278 F. Supp. 2d 390 (D.N.J. 2003). The principal issue presented in this appeal is whether FIFRA preempts Plaintiffs' claims that are based on theories of products liability, negligence, negligent misrepresentation, fraud, breach of warranty, and breach of the New Jersey Consumer Fraud Act.[3]

## II. Legal Analysis

### A. Preemption Under FIFRA

FIFRA is comprehensive regulatory statute that covers, among other things, the use, sale, and labeling of pesticides. FIFRA requires a manufacturer seeking to register a pesticide to submit a proposed label to the EPA along with supporting data. 7 U.S.C. § 136a(c)(1)(C), (F). The EPA will register the pesticide if it determines that the pesticide is efficacious and will not cause unreasonable adverse effects on humans and the environment, and that its label complies with FIFRA's prohibition on misbranding. A pesticide is "misbranded" under FIFRA if its label contains a statement that is "false or misleading in any particular," does not contain adequate instructions for use, or omits necessary warnings or cautionary statements. 7 U.S.C. § 136(q)(1)(A), (F), (G). FIFRA also provides that states "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this Act." 7 U.S.C. § 136v(b).

### 1. The inducement test and the Bates test

---

[3] The District Court had diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332. We have jurisdiction over the District Court's final order pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment. See Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006). Our review must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The District Court held that FIFRA preempts the farmers' claims of strict products liability, negligence, breach of express warranty, negligent misrepresentation, fraud, and breach of the New Jersey Consumer Fraud Act. In determining that § 136v(b) preempted the farmers' claims, the District Court applied the "inducement test" used by the majority of circuits at the time, whereby claims are preempted by FIFRA "'if a judgment against [the defendant] would induce [the defendant] to alter its product label.'" Mortellite, 278 F. Supp. 2d at 398 (quoting Dow Agrosciences LLC v. Bates, 332 F.3d 323, 331 (5th Cir. 2003)).

The District Court determined that, although the farmers' claims are purportedly based on other theories, they in fact "relate directly or indirectly to the fact that Novartis did not warn on its product label that [AG 600] should not be tank mixed with Captan or Captec." Id. Because the current label on Novartis had been approved by the EPA pursuant to FIFRA, the District Court concluded that "[a]llowing these claims to proceed would be, in effect, permitting State law damages claims to impose label requirements in addition to or different from the federally approved label and FIFRA," contrary to FIFRA's preemption component. Id. (internal quotation marks omitted). Thus, the District Court held that the claims were preempted by FIFRA.

Following the District Court's decision, the Supreme Court clarified the scope of FIFRA preemption in Bates. v. Dow Agrosciences LLP, 544 U.S. 431 (2005). In Bates, Plaintiffs were Texas peanut farmers who brought actions against a pesticide manufacturer based on alleged injuries to their crops. Id. at 435. The pesticide's label stated that it was recommended for use in the areas where the peanut farmers experienced crop damage. Id. The farmers alleged that, in reality, the pesticide was unsafe for crops grown in soil with a pH level of 7.0 or greater and that, as a result, it injured their peanut crops, which were grown in soil with pH levels of 7.2 or higher. Id. The farmers brought claims based on theories of strict liability and negligence, and claims of fraud, breach of warranty, and violation of the Texas Deceptive Trade Practices-Consumer Protection Act. The District Court dismissed one of the plaintiffs' claims on state law grounds and rejected the others under FIFRA's preemption provision. The Court of Appeals

8

affirmed, concluding that the plaintiffs' claims were preempted by FIFRA because those claims, if successful, "would give Dow a 'strong incentive' to change its label." Id. at 436 (quoting Dow Agrosciences, 332 F.3d at 331-32).

The Supreme Court reversed, rejecting the inducement test as a means of determining preemption by FIFRA. Id. at 444-46. The Court stated that an "event, such as a jury verdict, that might 'induce' a pesticide manufacturer to change its label" should not be viewed as imposing a new labeling requirement in conflict with FIFRA. Id. at 443-45. Such an event "merely motivates an optional decision" to change a label and therefore "does not qualify as a requirement" to change a label. Id. Moreover, the Court reasoned that, even where a claim would impose a requirement to change a label, such a claim is not preempted by FIFRA unless it imposes a requirement in addition to or different from those under FIFRA. Id. at 444.

In place of the inducement test, the Supreme Court set forth a two-part test for determining whether a state statute or common law claim is preempted by FIFRA. First, the statute or common law rule must create a requirement for labeling or packaging. Id. Second, the labeling or packaging requirement must be in addition to or different from those required under FIFRA. Id. An action is preempted by FIFRA only if it fulfills both requirements of the test. Id.

**2. Claims of strict liability, negligent testing, and breach of express warranty**

Under the Bates test, the farmers' claims of strict liability, negligent testing, and breach of warranty are not preempted by FIFRA. In Bates, the Supreme Court faced an almost identical question and concluded that the plaintiffs' claims for strict liability, negligent testing, and breach of warranty were not preempted by FIFRA because such claims do not require the manufacturer to label or package the products in any particular manner. Id. at 444-46. The Supreme Court reasoned that "[r]ules that require manufacturers to design reasonably safe products, to use due care in conducting appropriate testing of their products, to market products free of manufacturing defects, and to honor their express

9

warranties or other contractual commitments plainly do not qualify as requirements for 'labeling or packaging.'" Id. at 444. The Court added that, "[n]one of these common-law rules requires that manufacturers label or package their products in any particular way." Id. Although the express warranty in Bates was located on the product's label, the state express warranty rule would not impose a labeling requirement because the cause of action asked "only that a manufacturer make good on the contractual commitment that it voluntarily undertook by placing that warranty on its product." Id. Because an express warranty rule does not "require the manufacturer to make an express warranty, or in the event that the manufacturer elects to do so, to say anything in particular in that warranty, the rule does not impose a requirement for labeling or packaging." Id. (internal quotation marks and citation omitted).

Extending this reasoning to the case at hand, we conclude that FIFRA does not preempt claims based on theories of strict liability, negligent testing, and breach of express warranty. As the Supreme Court explained, such common law claims plainly do not impose labeling requirements, and therefore cannot conflict with FIFRA. While success on these claims may induce Defendant to change the label, this "attenuated pressure" does not amount to a "requirement" within the meaning of FIFRA's preemption provision. In other words, a manufacturer may change its label as a result of a verdict against it, but it is not required to do so. We therefore vacate the District Court's judgment dismissing Plaintiffs' claims of strict liability, negligent testing, and breach of express warranty.

**3. Claims for negligent misrepresentation, fraud, and breach of the New Jersey Consumer Fraud Act**

Plaintiffs allege their claims of negligent misrepresentation, fraud, and breach of the New Jersey Consumer Fraud Act are primarily based on oral misrepresentations made to them by representatives of Novartis while marketing AG 600. In Bates, the Supreme Court determined that claims for negligent misrepresentation, fraud, and breach of a statutory consumer fraud act were not preempted to the extent that they were based on oral representations made by Defendant. Id. at 444 n.17. The Court

10

reasoned that, "[b]ecause FIFRA defines labeling as 'all labels and all other written, printed, or graphic matter' that accompany a pesticide, § 136(p)(2), any requirement that applied to a sales agent's <u>oral</u> representations would not be a requirement for 'labeling or packaging'" and therefore would not fulfill the first requirement of the <u>Bates</u> test. <u>Id.</u> We conclude that, to the extent that Plaintiffs claims for negligent misrepresentation, fraud, and breach of the statutory consumer fraud act are based on oral misrepresentations, the claims are not preempted by FIFRA.

Plaintiffs' claims of negligent misrepresentation, fraud, and breach of the New Jersey Consumer Fraud Act are also based on written misrepresentations in brochures and marketing materials that Novartis used to market AG 600 to Plaintiffs. In determining that FIFRA preempted these claims, the District Court relied on <u>Kuiper v. American Cyanamid Company</u>, 131 F.3d 656 (7th Cir. 1997), in which the Seventh Circuit held that claims challenging off-label statements about product safety that merely reiterate information found on the label are preempted because such challenges indirectly challenge the label. <u>Id.</u> at 662-63. This holding is inconsistent with <u>Bates</u>, which holds that causes of action which do not directly involve a label but which merely induce a company to change its label are not preempted under FIFRA. <u>Bates</u>, 544 U.S. 431 at 444. We conclude that Plaintiffs' claims of negligent misrepresentation, fraud, and statutory consumer fraud are preempted only to the extent that those claims rely on written misrepresentations that qualify as "labels" or "labeling" as defined by FIFRA.

FIFRA defines a "label" as "the written, printed, or graphic matter on, or attached to, the pesticide or device or any of its containers or wrappers." 7 U.S.C. § 136(p)(1). FIFRA defines "labeling"as:

> all labels and all other written, printed, or graphic matter–
>
> (A) accompanying the pesticide or device at any time; or
>
> (B) to which reference is made on the label or in literature accompanying the pesticide or device, except to current official publications of the Environmental Protection Agency, the United States Departments of Agriculture and Interior, the Department of Health and Human Services,

11

State experiment stations, State agricultural colleges, and other similar Federal or State institutions or agencies authorized by law to conduct research in the field of pesticides.

7 U.S.C. § 136(p)(2). Because the question of whether the alleged written misstatements fall within this definition was not fully briefed and argued on appeal, we remand to the District Court so that it may consider the issue under Bates.

## 4. The failure-to-warn claim

Unlike the previous claims, Plaintiffs' failure-to-warn claim clearly fulfills the first requirement of the Bates test by creating a labeling requirement for a product. Id. at 444. That said, preemption applies only to those claims which, if successful, would create labeling requirements additional to or different from those already set forth in FIFRA. Id. Claims that result in requirements that are consistent with FIFRA requirements and which only provide new remedies are not preempted. Id. at 447-48, 452.

Plaintiffs allege that Novartis was negligent in its failure to warn Plaintiffs that AG 600 could be harmful to their crops if mixed with a fungicide. The issue of whether Plaintiffs' failure-to-warn claims would, if successful, create requirements in addition to or different from those under FIFRA has not been fully briefed and argued on appeal. We therefore remand that issue to the District Court.

### B. Dismissal of the Claims of Seven of the Thirteen Settling Farmers

The farmers also appeal the District Court's holding that seven of the settling farmers (the "dismissed farmers") could not, as a matter of law, establish the reasonable reliance on a statement by Novartis required for a claim of fraud in the inducement.[4] Here,

---

[4]As described above, the District Court also found that only three of the farmers had claims for breach of the covenant of good

12

the settling farmers allege that Novartis made material misrepresentations that, notwithstanding the language of the releases, if future crops suffered damage as a result of the farmers' use of AG 600 in 1997, Novartis would pay for this damage when it manifested. The settling farmers allege that they relied on this misrepresentation when signing the releases.

Under New Jersey law, a settlement agreement is a form of contract, and courts must look to the general rules of contract law to resolve disputes over a settlement agreement. See Borough of Haledon v. Borough of N. Haledon, 817 A.2d 965, 975 (N.J. Super. 2003). Generally, the plain language of a settlement agreement is entitled to a presumption of validity. Peter W. Kero, Inc. v. Terminal Constr. Corp., 78 A.2d 814, 817-18 (N.J. 1951); see also Jannarone v. W.T. Co., 168 A.2d 72, 74 (N.J. 1961) (explaining that settlement agreement should be enforced given high value judicial system places on settlement). There is an exception to this presumption of validity where one party alleges fraud in the inducement of the contract. See Kero, 78 A.2d at 818.

In order to prove equitable fraud in the inducement of the contract, the plaintiff must demonstrate: 1) a material misrepresentation of a presently existing or past fact, 2) reasonable reliance on the misrepresentation by the plaintiff, and 3) resulting damages to the plaintiff. See Jewish Ctr. of Sussex County v. Whale, 432 A.2d 521, 524 (N.J. 1981); Weil v. Express Container Corp., 824 A.2d 174, 182 (N.J. Super. 2003).

None of the dismissed farmers allege that Novartis, either directly or through a representative such as Lapp, told them that they would or could receive damages for the 1998 crop. Rather, the dismissed farmers allege that they heard through Sciarappa and other farmers that Novartis would pay for damage to the 1998 crop, and that they relied on this representation when signing their

---

faith and fair dealing based on Novartis's alleged threats to withdraw the settlement offers if these farmers sought legal advice. Because Plaintiffs do not appeal this part of the District Court's decision, we do not address it.

settlements and releases. Specifically, Bill Augustine, Lou Condo, and Jeffrey Whalen allege that they were told by both Sciarappa and other farmers, and David Rizzotte, Carmen Merlino, Joseph Berenato, and Anthony Vaccarella allege that they were told only by other farmers and not by Sciarappa.

The dismissed farmers argue that their reliance on the statements Novartis allegedly made to Sciarappa and other farmers supports a claim of fraud in the inducement under the theory of indirect reliance. Under New Jersey law, the theory of indirect reliance allows a plaintiff to maintain a fraud action based upon a statement the plaintiff heard "not from the party that defrauded him or her but from that party's agent or from someone to whom the party communicated the false statement with the intention that the victim hear it, rely on it, and act to his or her detriment." Kaufman v. I-Stat Corp., 754 A.2d 1188, 1195 (N.J. 2000). Thus,

> [i]f a party to a transaction makes a false statement to another party, intending or knowing that the other party in the transaction will hear it and rely on it, and the second party to the transaction actually hears the substance of the misrepresentation, by means however attenuated, and considers the actual content of that misrepresentation when making the decision to complete the transaction, then that person has established indirect reliance to support a fraud claim.

Id. at 1196-97.

Summary judgment was appropriate on the dismissed farmers' claims because they cannot demonstrate that their reliance on the statements of Sciarappa or other farmers was reasonable. See Kaufman v. I-Stat Corp., 735 A.2d 606, 609 (N.J. Super. 1999) ("The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved.") (emphasis added) (quoting Restatement (Second) of Torts § 533 (1977)), judgment

14

reversed on other grounds, <u>Kaufman</u>, 754 A.2d at 1201. It is clear from their deposition testimony that the dismissed farmers were aware of the possibility of future damages. Moreover, Sciarappa testified that each individual farmer was responsible for negotiating his or her own settlement with Novartis.[5] Based on this evidence, no reasonable juror could find that the settling farmers reasonably relied on the statements of Sciarappa or other farmers in disregarding the plain language of the releases pertaining to future damages.

Moreover, the theory of indirect reliance requires that the fraudulent statement either be made by the defendant's agent directly to the victims, or by the defendant to a third person with the intention that the victim hear it. <u>See</u> <u>Kaufmann</u>, 754 A.2d at 1195. In this case, neither Sciarappa nor any of the farmers was an agent of Novartis. Furthermore, the dismissed farmers put forth no evidence that Novartis made the allegedly fraudulent statements to Sciarappa or the other farmers with the intention that the dismissed farmers hear the statements. Thus, the dismissed farmers cannot demonstrate an essential element of indirect reliance.

The dismissed farmers argue that, even if the theory of indirect reliance is inapplicable, their claims should survive summary judgment because Sciarappa was their agent and thus all representations made to him by Novartis were representations made to them as Sciarappa's principal.[6] Although Sciarappa performed extensive work for the farmers with regard to calculating their damages, he was not their agent for the purposes of negotiating their settlement. Sciarappa's deposition testimony

---

[5]Sciarappa testified that he never informed any of the farmers that Novartis would be discussing settlement for any damages that occurred in 1998 because it was not his responsibility, as he was "not speaking for Novartis" and "it was up to [the farmers] to discuss [future damages] with Novartis."

[6]The Appellants acknowledge that this argument does not apply to Rizzotte and Vaccarella, as these farmers did not hire Sciarappa.

15

explicitly states that he was an "independent person" and it was each farmer's responsibility to negotiate his or her own settlement. Indeed, Sciarappa was not even aware of the releases until months after all the settlements had been signed.

In sum, because plaintiffs Augustine, Berenato, Condo, Merlino, Rizzotte, Vaccarella, and Whalen cannot demonstrate the necessary elements for their claims of fraud, we affirm the District Court's grant of summary judgment enforcing the releases. Because the plain language of the releases bars these farmers' remaining claims, we affirm the District Court's grant of summary judgment as to those remaining claims.

## C. Dismissal of the Fictitious Plaintiffs

The Third Amended Complaint lists as John Doe plaintiffs "fictitious farmers not yet identified" in order to "protect those plaintiffs' interests." There is no allegation or evidence of the citizenship of these fictitious farmers. John Doe parties destroy diversity jurisdiction if their citizenship cannot truthfully be alleged. See Kiser v. Gen. Elec. Corp., 831 F.2d 423, 426 n.6 (3d Cir. 1987). However, the Supreme Court has held that courts of appeals have the authority to dismiss dispensable John Doe parties in order to preserve diversity jurisdiction. See Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 827 (1989). Here, the named plaintiffs can obtain complete relief without the presence of the John Doe plaintiffs, and any claims arising between the John Doe plaintiffs and Novartis can be adjudicated in a subsequent action. We conclude that the John Doe plaintiffs are dispensable parties, and we will therefore dismiss their claims.

## III. Conclusion

For the reasons stated above, we vacate the District Court's judgment dismissing the plaintiffs' claims as preempted by FIFRA and remand for further proceedings consistent with this opinion. We also remand to the District Court to determine whether, under

16

Bates, FIFRA preempts 1) Plaintiffs' negligent misrepresentation, fraud, and statutory fraud claims to the extent they are based on written misrepresentations and 2) Plaintiffs' failure-to-warn claim. We affirm the District Court's grant of summary judgment dismissing the claims of plaintiffs Augustine, Berenato, Condo, Merlino, Rizzotte, Vaccarella, and Whalen, and we dismiss the claims of the John Doe plaintiffs.